AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Respondent,

v.

Jerry PECK and Mary Ann
Peck, Appellants,

Shane Michael Bakalar, Defendant.

No. WD 64645.

Missouri Court of Appeals,
Western District.

Aug. 23, 2005.

Russell Clark Purvis, Kansas City, for Appellant.

Keith Joseph Schieber, St. Joseph, for Respondent.

Shane Michael Bakalar, pro se, for Defendant.

RONALD R. HOLLIGER, Presiding Judge.

Jerry and Mary Ann Peck appeal a trial court declaratory judgment in favor of American Family. The Pecks allege that the trial court erred in declaring that a homeowner's insurance policy issued by American Family did not cover an off road accident involving a three wheel recreational vehicle that caused the death of their son, Devon Peck. We hold (1) that the policy language provides coverage for ATV's that are not subject to motor vehicle registration, (2) ATV registration is not the same as motor vehicle registration, and (3) the vehicle involved in this accident was not subject to motor vehicle registration and was, therefore, covered under the Policy. Accordingly, we reverse.

### Facts

On the evening of October 14, 2001, Shane Bakalar was operating a three-wheeled Honda motorized vehicle near North Platte High School in Platte County, Missouri. Devon Lee Peck was a passenger on the vehicle when an accident occurred from which he sustained fatal injuries. At the time of the accident Bakalar was not the owner of the vehicle, but he was insured by a homeowner's insurance policy issued by American Family Mutual Insurance Company (American Family).

The parents of Devon Peck (the Pecks) filed an action for wrongful death against

Bakalar in the Circuit Court of Platte County, Missouri. Ultimately judgment was taken against Bakalar in the amount of $500,000 pursuant to Section 537.065, RSMo.

Prior to the entry of judgment against Bakalar, American Family filed a Petition for Declaratory Judgment seeking a judicial determination of whether the homeowner's policy issued to Bakalar provided coverage for the accident. American Family took the position that the policy did not provide coverage because an exclusion to the policy specifically excepted coverage for injuries resulting from the use of any motorized vehicle "subject to motor vehicle registration." American Family argued that the vehicle driven by Bakalar was an all terrain vehicle (ATV) and, therefore, subject to motor vehicle registration under Missouri law.

The Pecks, conversely, disputed that the vehicle was within the statutory definition of an ATV and claimed that the wording of the policy was ambiguous. Alternatively, in the event that the vehicle was an ATV, the Pecks claimed that ATV registration, as required under Missouri law, was categorically different than the exclusion for "motor vehicle registration" found in the policy.

At the hearing, Bakalar testified that the vehicle he was driving the night of the accident did not have a horn, turn signals, rear view mirror, or a speedometer. Bakalar testified that he had only been in possession of the vehicle for approximately 24 hours prior to the accident and that he had driven the vehicle several times on public highways during that time. Testimony was also admitted that the vehicle had a manual transmission, was 50 inches or less in width, and weighed less than 600 pounds. The vehicle had three low-pressure tires with knobby tread that were designed for off-road use.

The trial court found in favor of American Family and the Pecks now appeal.

## Discussion

■ Generally, we review court-tried cases under the standard set forth in *Murphy v. Carron* and will affirm the judgment unless it is against the weight of the evidence, it is not supported by substantial evidence, or it erroneously declares or applies the law. 536 S.W.2d 30, 32 (Mo. banc 1976). "In a court-tried declaratory judgment action, however, interpretation of an insurance policy is a question of law, and the trial court receives no deference where resolution of the controversy is a question of law." *Auto. Club Inter–Ins. Exch. v. Medrano,* 83 S.W.3d 632, 637 (Mo.App. 2002). The disposition of this case turns on the interpretation of certain exclusionary language from the insurance policy issued to Bakalar. The exclusion excepts liability for bodily injury or property damage resulting from the use of any vehicle "subject to motor vehicle registration." The exclusion and its corresponding exception read in relevant part:

> We will not cover bodily injury or property damage arising out of the ownership, supervision, entrustment, maintenance, operation, use, loading or unloading of any type of motor vehicle, motorized land conveyance or trailer, except:

> We will provide specific coverage on only the following types owned or operated by or rented or loaned to any insured:

> (3) a motorized land conveyance including a motorized bicycle, tricycle or similar type of equipment designed principally for recreational use off public roads, which is *not subject to motor vehicle registration* and is:

> (a) not owned or leased by an insured

(Emphasis added). It is undisputed that Bakalar was not the owner of the vehicle involved in the crash. What is in dispute is how to classify the vehicle in question and whether the vehicle was "subject to motor vehicle registration." The policy leaves the term undefined.

American Family argues that the vehicle Bakalar was driving at the time of the accident is clearly within the statutory definition of an ATV, Section 301.010(1), RSMo 2000, and that ATV's are required to be registered with the Department of Revenue. *See* Section 301.707, RSMo 2000. American Family claims that the statutorily required registration of ATV's renders the vehicle "subject to motor vehicle registration" and, thus, excluded from coverage by the express terms of the policy.

The Pecks argue in response that the vehicle does not qualify as an ATV under the statutory definition. They argue further that, even if it does qualify as an ATV, such vehicles are not specifically removed from coverage by the exclusion and that ATV registration is categorically different than motor vehicle registration under Missouri law.

First we turn to the classification of the instrumentality in question, and then we will discuss whether it was subject to motor vehicle registration.

### Classifying the vehicle

■ The Pecks argue that the three-wheeled vehicle driven by Bakalar, which was controlled with handlebars and equipped with low-pressure, knobby tread, tires "designed specifically for off road use,"[1] is not an ATV. The Pecks then argue by extension that, as a non-ATV, the vehicle is not subject to the ATV registration requirement. *See* Section 301.707, RSMo 2000. This argument is based on an overly narrow reading of the statutory definition of an ATV; it reads:

"All-terrain vehicle," any motorized vehicle manufactured and *used exclusively for off-highway use* which is fifty inches or less in width, with an unladen dry weight of six hundred pounds or less, traveling on three, four or more low pressure tires, with a seat designed to be straddled by the operator, and handlebars for steering control[.]

Section 301.010(1), RSMo 2000 (emphasis added). The Pecks aver that since Bakalar testified that he operated the vehicle on a public highway several times, the vehicle necessarily does not fit within the plain meaning of the statutory definition of an ATV because it was not *used exclusively*[2] off the highway.

American Family responds that the vehicle in question is clearly an ATV because it falls squarely within the definition being less than 50 inches in width, less than 600 pounds, and is designed for use by a straddled operator who controls it with handlebars. American Family argues, and we agree, that the Pecks' reliance on the statute's peculiar literal wording to support such an argument is absurd because any motorized vehicle, including this one, which lacked rear taillights, a horn or directional signals, can be illegally driven on a public roadway. It would be illogical to allow such flaunting of the law to redefine

---

1. This characterization comes directly from the owner's manual admitted as an exhibit during trial.

2. The Pecks provide this court with the dictionary definition for the word exclusive: [a]ppertaining to the subject alone, not including, admitting, or pertaining to any others. Sole. Shutting out; debarring from interference or participation; vested in one person alone. Apart from all others, without admission of others to participation. BLACK'S LAW DICTIONARY 564 (6th ed.1990).

the nature of the vehicle.[3] Practically speaking, however, it ultimately matters little (for the purposes of this case anyway) whether this vehicle fits within the statutory definition of an ATV for at least two reasons: (1) even if it is an ATV, as American Family claims, the vehicle is not "subject to motor vehicle registration" as contemplated by statute and the policy, and (2) if it's not an ATV, the vehicle clearly falls within the term *motorized land conveyance* from the exception to the exclusion. In other words, ATV or not, the vehicle is not subject to motor vehicle registration. We discuss (1) below; as for (2), it is self evident that this vehicle has a motor and is used on land. The word "conveyance" will be given its plain and ordinary meaning, *Mo. Employers Mut. Ins. Co. v. Nichols,* 149 S.W.3d 617, 625 (Mo.App.2004), as "[a] means of conveying, esp. a vehicle for transportation." AMERICAN HERITAGE DICTIONARY 304 (3d ed.1993). Thus, the vehicle in question is clearly a "motorized land conveyance."

In sum, the three-wheeled vehicle at issue is not excluded from coverage by its vehicular classification because the policy exclusion does not specifically exempt ATV's and, regardless, the vehicle fits into the term "motorized land conveyance" from the exception to the exclusion. Thus, the only remaining issue is whether bodily injury resulting from the operation of this vehicle was not covered by the policy because the vehicle was "subject to motor vehicle registration." If the vehicle is subject to motor vehicle registration, then the trial court properly found that coverage did not exist.

For ease of analysis, we will assume for the remainder of this discussion that the vehicle is indeed an ATV as American Family claims.

## ATV's are not "subject to motor vehicle registration" as contemplated by the policy and Missouri law

 The Pecks allege that the term "subject to motor vehicle registration" is ambiguous and, therefore, should be construed against American Family in favor of insurance coverage. The Pecks initially appear to argue that since the term is not specifically defined in the Policy it is, *ipso facto,* ambiguous. This is not the law regarding ambiguity in insurance contracts. The fact that a term remains undefined in a policy does not necessarily render it ambiguous, *see State Farm Mut. Auto. Ins. Co. v. DeCaigney,* 927 S.W.2d 907, 910 (Mo.App.1996), and courts should take care not to create ambiguities where none exist. *Mansion Hills Condo. Ass'n v. Am. Family Mut. Ins. Co.,* 62 S.W.3d 633, 637 (Mo. App.2001). "An ambiguity arises where there is a duplicity, indistinctness, or uncertainty in the meaning of the words used in an insurance contract." *Nichols,* 149 S.W.3d at 625. When interpreting an insurance contract, we read the contract as a whole and determine the intent of the parties, giving effect to that intent by enforcing the contract as written. *Id.* Language is ambiguous if it is reasonably open to different constructions and the language used will be viewed in the meaning that would ordinarily be understood by the layperson that bought and paid for the policy. *Lincoln County Ambulance Dist. v. Pac. Employers Ins. Co.,* 15 S.W.3d 739, 743

---

**3.** Indeed, the statute's use of the words "used exclusively for off-highway use" in conjunction with Bakalar's admission that he drove on the highway, is the Pecks' only support for their assertion that Bakalar's vehicle is not an ATV. The reality is that driving an unmodified ATV on the highway is a class C misdemeanor, *see* Section 304.013, RSMo 2000, and such illegality cannot support the Pecks' argument that Bakalar's vehicle does not qualify as an ATV.

(Mo.App.1998). A term may be deemed ambiguous in the context of one insurance policy, and not ambiguous in another. *De-Caigney,* 927 S.W.2d at 910. If a term appearing in an insurance contract is not otherwise defined, an appellate court is free to give a reasonable construction to the term, applying general contract principles and resolving doubts in favor of the insured. *Mansion Hills,* 62 S.W.3d at 638. Since the policy exclusion invokes state law provisions regarding vehicle registration, we will look to the controlling statutes, state regulations, and the policies behind them in construing the meaning of the term "subject to motor vehicle registration" and evaluating any resulting ambiguity.

The crux of American Family's assertion that Bakalar's vehicle is subject to motor vehicle registration rests on American Family's reading of Section 301.707, which requires all ATV's operated in the state to be registered with the Department of Revenue. It straightforwardly provides: "No person shall operate an all-terrain vehicle within the state unless the all-terrain vehicle has been registered with the Department of Revenue." Section 301.707.1, RSMo 2000. American Family points to Section 301.707 and argues that the ATV Bakalar drove was, therefore, clearly "subject to motor vehicle registration." At first blush American Family's position seems appealing; however, upon closer examination of Missouri statutes, clear distinctions emerge between registering a motor vehicle for the purposes of legally driving on a public highway and registering an ATV. While both forms of registration are recorded with the Department of Revenue, we believe the policy language in dispute refers to the former.

The general purpose behind motor vehicle registration requirements is to identify vehicles in relation to their owners. *See* generally Jay M. Zitter, Annotation, *What Constitutes Farm Vehicle, Construction Equipment, or Vehicle Temporarily on Highway Exempt from Registration as Motor Vehicle,* 27 A.L.R.4th 843 Section 2. This is especially important when motor vehicles are involved in accidents resulting in damage or injury. *Id.* In addition to providing for ATV registration, Chapter 301 of the Missouri statutes also governs the registration of motor vehicles to be driven on the public highways. Section 301.020.1 requires that every owner of a motor vehicle to be driven on the public highways must annually file an "application for registration" with the Director of Revenue. This application must contain, among other things, a description of the vehicle, the name of the manufacturer, the vehicle identification number, and the vehicle's horsepower. Section 301.020.1(1), RSMo 2000. Missouri law further requires that all motor vehicles, prior to registration, pass an "inspection of their mechanism and equipment." Section 307.350.1(3), RSMo 2000. This inspection is for the purpose of ensuring that the vehicle is in compliance with all of the relevant equipment regulations from Chapter 307 that apply to roadworthy vehicles but not to ATV's. Additionally, prior to completion of motor vehicle registration, the owner of the motor vehicle must prove compliance with Missouri's financial responsibility law, which generally requires some kind of liability insurance coverage on the vehicle. Section 303.025, RSMo 2000. Upon completion of motor vehicle registration the owner of the vehicle receives license plates from the Department of Revenue that must be appropriately displayed in accordance with the law. Section 301.130, RSMo 2000.

ATV registration is controlled by Section 301.707 *et seq.* Sections 301.709 and 301.711 detail the requirements to complete ATV registration. The process in-

volves merely filling out a form describing the vehicle and paying a ten-dollar fee. Few of the above-described procedures apply to ATV registration and the process is utterly dissimilar from the practice of registering a motor vehicle to be driven on the public highways. Chapter 301 makes the distinction by implication between ATV's and motor vehicles by assigning different registration protocols for the two distinct vehicular creatures.

The Missouri Code of State Regulations also offers useful insight on the alleged similarity of ATV registration and motor vehicle registration. Chapter 12 reveals that it is indeed possible to register an ATV as a motor vehicle in the event that the ATV's character is completely altered. 12 CSR 10–23.428(1) declares that "[a]n all-terrain vehicle (ATV) is not a motor vehicle and may not be operated on the streets and highways...." If an ATV is modified to pass a vehicle examination and otherwise become fit to be driven on a public roadway, the regulation requires that it "must be retitled as a motor vehicle and appropriately registered" prior to being used as such. 12 CSR 10–23.428(1)–(2). The obvious implication of this provision is that any previous registration (presumably as an ATV) is insufficient to legally permit the vehicle to be driven on the public highways. The regulation goes on to enumerate the steps that need be taken to register a road-worthy ATV which, conspicuously, mirror the requirements to register a motor vehicle. Only after these steps are taken may an ATV be legally driven on the public roadways.

After careful review of these statutes and regulations, we find that the undefined Policy term "subject to motor vehicle reg-

istration" does not include registering an ATV under Section 301.707. Taking guidance from the statutes, we find its plain meaning, as understood by a layperson, invokes the process of registering a vehicle to be driven on the public roadways of this State. An unmodified ATV, like the one at issue in this case, simply cannot be registered as a motor vehicle and, thereby, permitted to be legally driven on public roadways. We recognize that American Family points us to non-controlling case law equating the two types of registration. *See Safeco Ins. Co. of Am. v. Clifford,* 896 F.Supp. 1032 (D.Or.1995).[4] We note this contrary precedent and decline to follow it, finding other authority on the issue to be a more commonsense and persuasive approach. *See Concord Gen. Mut. Ins. Co. v. Woods,* 175 Vt. 212, 824 A.2d 572 (2003) (ATV was not subject to motor vehicle registration even though the insured occasionally operated it on public roads and registered it as an ATV with the commissioner of motor vehicles); *MacLean v. Hingham Mut. Fire Ins. Co.,* 51 Mass. App.Ct. 870, 750 N.E.2d 494 (2001) (ATV, while subject to "environmental registration," was not subject to motor vehicle registration and, thus, fell within an exception to the exclusion of insurance policy); *Pelter v. Dep't. of Transp.,* 663 A.2d 844 (Pa.Cmwlth.1995) (registration of ATV with the State did not confer authority to operate it on highways nor require compliance with financial responsibility law and, therefore, was not the same as motor vehicle registration).

Nor are we persuaded by American Family's reference to *Ferguson v. Gateway Insurance Co.,* 151 S.W.3d 911 (Mo. App.2004) (holding that a horse-drawn

---

4. Holding that an ATV was subject to motor vehicle registration under Oregon law within the meaning of the policy despite that ATV registration was controlled by a separate chapter of the Oregon Revised Statutes. The plain language of the statutes suggested that ATV's were to be registered the same way as other motor vehicles.

buggy was not a motor vehicle for purposes of uninsured motorist coverage), or *Meeks v. Berkbuegler*, 632 S.W.2d 24 (Mo. App.1982) (holding that a dune buggy being operated off-road was not an uninsured motor vehicle). The issue here is not whether the ATV was a motor vehicle or came within the definition of an uninsured motor vehicle of an automobile liability policy. Rather, the question is whether the ATV was subject to "motor vehicle registration" under Missouri law. These cases simply do not aid in that analysis.

Similarly, we are not persuaded by American Family's argument equating ATV registration to motor vehicle registration simply because both are administered by the Department of Revenue. Construing the policy's language to provide or deny coverage based upon the administrative agency that receives and processes the registration is a tortured interpretation that we resist entertaining here. The more reasoned approach, the one we have chosen, is to decide whether registering a motor vehicle for operation on a public highway and registering an ATV is the same thing; for the purposes of the insurance policy at issue, we find that they are not. It is illogical to equate the two types of registration in light of the statutes and regulations reviewed above.

Finally, American Family also appears to argue that since ATV's have previously been held to be within the broad statutory definition of a "motor vehicle," *see Rice v. Fire Ins. Exch.*, 946 S.W.2d 40 (Mo.App. 1997), that ATV's are necessarily subject to motor vehicle registration. This argument is also unpersuasive. Section 301.010.33, defines "motor vehicle" broadly as "any self-propelled vehicle not operated exclusively upon tracks, except farm tractors." To be sure, the vehicle at issue likely falls within this broad description. However, simply because a vehicle with a motor is considered within the broad statutory definition of a "motor vehicle" does not mean that it is "subject to motor vehicle registration." *See Stonger v. Riggs*, 85 S.W.3d 703 (Mo.App.2002) (riding lawnmower was "motor vehicle" where mower was used on the street); *Covert v. Fisher*, 151 S.W.3d 70 (Mo.App.2004) (golf cart was motor vehicle when driven on public highway). In neither of these cases would anyone reasonably argue that the "motor vehicles" at issue were subject to the motor vehicle registration procedures required of road worthy vehicles (nor could they qualify to be so) even though they were technically within the broad statutory definition of a motor vehicle. The term motor vehicle can be used in many contexts; the relevant question here is not whether this ATV is a motor vehicle, but whether it is subject to motor vehicle registration. We conclude that it is not.

As such, the vehicle Bakalar was driving at the time of the accident that resulted in Devon Peck's death was not "subject to motor vehicle registration" as the term is used in the policy issued to him. Therefore, the vehicle falls within the exception to the exclusion and coverage exists under the policy.

The judgment is reversed and remanded with directions to enter judgment in favor of the Plaintiffs.

ROBERT G. ULRICH, Judge, and JOSEPH M. ELLIS, Judge, concur.