Jeffrey D. SWADLEY, Chelsea S. Swadley, and Brooke L. Swadley, Respondents,

v.

SHELTER MUTUAL INSURANCE CO., Appellant.

No. SC 95844

Supreme Court of Missouri, en banc.

Opinion issued March 14, 2017

Rachel A. Riso, Baird Lightner Millsap, Springfield, for Appellant

Lauren A. Peterson, The Hershewe Law Firm PC, Joplin, for Respondents

Theresa A. Appelbaum, Padberg Corrigan & Appelbaum PC, St. Louis, for The Missouri Association of Trial Attorneys

Zel M. Fischer, Judge

Shelter Mutual Insurance Company appeals the circuit court's judgment awarding the Swadley family $100,000 pursuant to underinsured motorist ("UIM") coverage in the Swadleys' insurance policy. Because the policy at issue unambiguously precludes UIM coverage from applying to the Swadleys' claim, the circuit court's judgment is reversed and the case is remanded.

### Factual and Procedural History

Shelter issued the Swadleys a policy with UIM coverage.[1] The policy's declarations page lists "$100,000 Per Person" as the UIM "limit." The definitions section of the policy then defines "underinsured motor vehicle" as "a motor vehicle covered by a liability bond, governmental liability statute, or insurance policy, applicable to the occurrence; **but the monetary limits of that bond, statutory coverage, or policy, are less than the limits of underinsured motorists coverage shown in the Declarations.**" (Emphasis added). The clear and intentional effect of this definition is that UIM coverage will not apply when the underinsured motorist has liability coverage equal to or greater than $100,000.

With this policy in place, Angela Swadley's vehicle was struck by a tractor-trailer unit driven by an employee of Silk Way Trans, LLC, causing her vehicle to overturn. A motorcyclist subsequently struck Angela's overturned vehicle, lost control, and struck and killed Angela, who had exited the vehicle. The Swadleys filed a wrongful death claim against the driver, Silk Way, and the motorcyclist. Silk Way had liability insurance coverage of $1,000,000 and the Swadleys settled with the driver and Silk Way for $823,874.80.[2] The Swadleys then made a claim to Shelter pursuant to their policy's UIM coverage. Shelter denied the claim, arguing the tractor-trailer unit was not an "underinsured motor vehicle," as defined by the policy, because Silk Way had liability coverage ($1,000,000) greater than the UIM limit listed in the declarations ($100,000).

---

1. "The purpose of underinsured motorist coverage is to provide insurance coverage for insureds who have been bodily injured by a negligent motorist whose own automobile liability insurance coverage is insufficient to pay for the injured person's actual damages." *Wasson v. Shelter Mut. Ins. Co.*, 358 S.W.3d 113, 117 (Mo. App. 2011).

2. The motorcyclist, who was also injured, recovered $176,125.20, the balance of Silk Way's liability policy. The Swadleys did not seek recovery from the motorcyclist's insurance policy.

The Swadleys then filed a two-count petition against Shelter, with Count I seeking $100,000 based on UIM coverage and Count II alleging vexatious refusal to pay. Both sides moved for summary judgment on Count I. Shelter stipulated that the Swadleys sustained at least $923,874.80 in damages (i.e., at least $100,000 more than what the Swadleys recovered from Silk Way), but again argued the policy's UIM coverage did not apply under the circumstances. The Swadleys argued the policy was ambiguous and should be construed in their favor. The circuit court ruled the policy was ambiguous, entered partial summary judgment in favor of the Swadleys, and thereafter entered a judgment awarding the Swadleys $100,000.[3] Shelter appealed and, pursuant to article V, § 10 of the Missouri Constitution, the case was transferred to this Court by certification of a dissenting judge after opinion by the court of appeals.

### Standard of Review

■ "Whether to grant summary judgment is an issue of law that this Court determines *de novo*." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007). "The interpretation of an insurance policy is a question of law that this Court also determines *de novo*." *Id.*

### Analysis

■ Shelter argues UIM coverage does not apply to the Swadleys' claim because the tractor-trailer unit was not an "underinsured motor vehicle" pursuant to the policy's unambiguous definition. The Swadleys do not argue the policy's definition of "underinsured motor vehicle" is itself ambiguous or that the tractor-trailer unit was an "underinsured motor vehicle" pursuant to the policy's definition. Instead, they argue the policy is ambiguous as a whole because the declarations and other portions of the policy promise UIM coverage up to $100,000 but the definition of "underinsured motor vehicle" restricts when UIM coverage applies and set-off provisions ensure that Shelter will never be obligated to pay up to $100,000 in UIM coverage.

■ "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Id.* (internal quotations omitted). Additionally, "it is well-settled that where one section of an insurance policy promises coverage and another takes it away, the contract is ambiguous." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 140–41 (Mo. banc 2009). When determining whether an ambiguity exists, "[c]ourts should not interpret policy provisions in isolation but rather evaluate policies as a whole." *Id.* at 135. Any ambiguity is resolved in favor of the insured. *Id.* But "[a]bsent an ambiguity, an insurance policy must be enforced according to its terms." *Seeck*, 212 S.W.3d at 132.

■ Nowhere does this policy expressly promise UIM coverage under *every* circumstance, and nowhere does it promise UIM coverage when the underinsured motorist has liability coverage equal to or greater than the UIM limit. Therefore, the policy is not rendered ambiguous by the fact that the policy's definition of "underinsured motor vehicle" restricts UIM coverage to applying only when the underinsured motorist has liability coverage less than the UIM limit. As this Court has previously explained:

> Insurance policies customarily include definitions that limit words used in granting coverage as well as exclusions that exclude from coverage otherwise covered risks. While a broad grant of coverage in one provision that is taken

---

**3.** The circuit court dismissed Count II.

away by a more limited grant in another may be contradictory and inconsistent, the use of definitions and exclusions is not necessarily contradictory or inconsistent. . . . Definitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable.

*Floyd–Tunnell v. Shelter Mut. Ins. Co.,* 439 S.W.3d 215, 221 (Mo. banc 2014) (quoting *Todd v. Mo. United Sch. Ins. Council,* 223 S.W.3d 156, 162–63 (Mo. banc 2007)). The definition of "underinsured motor vehicle"—and consequently, when this policy's UIM coverage applies—is clear and unambiguous within the context of the policy as a whole. Indeed, this Court previously rejected the argument that a nearly identical definition of "underinsured motor vehicle" rendered a policy ambiguous. *See Rodriguez v. Gen. Accident Ins. Co. of Am.,* 808 S.W.2d 379, 382–83 (Mo. banc 1991).

The Swadleys, though, argue that, aside from the definition of "underinsured motor vehicle," the policy is ambiguous because it promises UIM coverage up to $100,000 but contains set-off provisions ensuring that Shelter will never be obligated to pay that full amount. But any ambiguity *as to the amount* of UIM coverage provided by this policy is irrelevant because such an ambiguity, if one exists, would not render this policy ambiguous *as to when* UIM coverage applies. Evaluating the policy as a whole, UIM coverage unambiguously does not apply when, as here, the underinsured motorist has liability coverage equal to or greater than $100,000.[4]

### Conclusion

The circuit court's judgment is reversed and the case is remanded.

Breckenridge, C.J., Stith, Wilson and Russell, JJ., concur;

Draper, J., dissents.

---

4. This case is distinguishable from *Seeck,* in which this Court held a particular "excess" insurance clause rendered a policy ambiguous even if the definition of "underinsured motor vehicle" were otherwise clear. 212 S.W.3d at 132–34. Because no similar clause appears in this policy, *Rodriguez,* rather than *Seeck,* applies here. *See id.* at 133–34. In addition to holding UIM coverage did not apply due to the clear definition of "underinsured motor vehicle," this Court in *Rodriguez* rejected the argument that the policy was ambiguous as to the amount of UIM coverage due to set-off provisions. 808 S.W.2d at 382–83. However, this Court has since explained that *Rodriguez*'s additional ambiguity analysis was merely dicta—because this Court had determined that UIM coverage did not apply in *Rodriguez,* there was no need to determine whether an ambiguity existed as to the amount of UIM coverage. *See Jones v. Mid–Century Ins. Co.,* 287 S.W.3d 687, 692 n.3 (Mo. banc 2009). Likewise, because UIM coverage does not apply in this case, any ambiguity analysis as to the amount of UIM coverage would be nothing more than dicta.