

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| EXOTIC MOTORS, | ) | No. ED108090 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Stanley J. Wallach |
| ZURICH AMERICAN INSURANCE CO., | ) | |
| | ) | |
| Respondent. | ) | FILED: March 10, 2020 |

## Introduction

Exotic Motors appeals from the motion court's grant of summary judgment to Zurich American Insurance Company ("Zurich") on Exotic Motors's claim under the False Pretense Coverage clause of its insurance policy (the "Policy"). The False Pretense Coverage clause provides an insured with coverage for "acquired" autos when the insured suffers a loss when "acquiring" an auto from a seller who lacked legal title or authority to transfer ownership.

Exotic Motors was a victim of a fraud. After paying a substantial sum to a third party to purchase an automobile, Exotic Motors never received possession of the purchased auto. Zurich denied Exotic Motors's claim under the Policy on the grounds that Exotic Motors never obtained possession of the car, and therefore the car was not an "acquired" vehicle under the Policy. The motion court agreed and granted summary judgment in favor of Zurich. In its sole point on appeal, Exotic Motors maintains that the meaning of the term "acquire" under the Policy includes a purchase of a vehicle, even though the purchaser never receives physical possession or

legal title. The motion court correctly found that Exotic Motors's claim was not covered under the Policy because the plain and ordinary meaning of the term "acquire" requires the exercise of possession and control over the subject property. Because Exotic Motors never obtained possession or control over the car it attempted to purchase, the motion court properly granted summary judgment in favor of Zurich. Accordingly, we affirm the motion court's judgment.

Factual and Procedural History

In July 2017, Exotic Motors attempted to purchase a 2015 Mercedes-Benz SL63 AMG (the "Vehicle") from an individual calling himself Robert Weir ("Weir"). Exotic Motors and Weir negotiated the sale through emails and text messages. In these communications, Weir provided Exotic Motors with what he claimed was the Vehicle's license plate information and certificate of title. Exotic Motors agreed to purchase the Vehicle for $90,100 and entered into a purchase agreement and bill of sale.[1] Exotic Motors then wired the $90,100 to Weir's bank account and attempted to make arrangements to pick up the Vehicle. However, when Exotic Motors tried to contact Weir to finalize the details, Weir could not be reached. A criminal investigation revealed that Weir had been using an alias, never had legal title to the Vehicle, and that the Vehicle's vehicle identification number ("VIN") and license plate information belonged to third parties with no knowledge of Weir's actions.

Exotic Motors made a claim for loss under its auto-dealers Policy issued by Zurich, effective from February 1, 2017 through February 1, 2018. The Policy's False Pretense

---

[1] The appellate record contains filings from the cross-motions for summary judgment, including the Petition as an exhibit. However, Exotic Motors did not attach to the record on appeal evidence of its agreement with the seller. We will not consider evidence that is not in the record. Mo. R. Civ. P. Rule 81.12 (2020); United Fire & Cas. Co. v. Hall, 536 S.W.3d 738, 742 n.5 (Mo. App. S.D. 2017) ("[A]n exhibit omitted from the record on appeal may be treated by an appellate court either as immaterial to the issues presented or as supporting the judgment of the [motion] court."). Likewise, the record on appeal does not contain a complete copy of the Policy. The parties agree that our review is limited to the excerpted False Pretense Coverage provision of the Policy. See Rule 81.12; United Fire & Cas. Co., 536 S.W.3d at 742 n.5.

Coverage includes the following provision under Section 1, Covered Autos Coverages,

Paragraph F. Physical Damage Coverage:

1. The following is added:
   a. **Any "auto" you have acquired is a covered "auto" under False Pretense Coverage.**
   b. We will pay for "loss" to a covered "auto" under False Pretense Coverage caused by:
      (1) Your voluntary parting with evidence of title to or possession of the covered "auto" . . . [.]
      **(2) Your acquiring an "auto" from a seller who did not have legal title or authority to transfer ownership of that property.**
      (3) The unauthorized retention (without intent to return) of a covered "auto" by:
         (a) Your customer . . . [.]
         (b) Any person to whom you furnish a covered "auto" for their regular use.

(emphases added). Zurich denied coverage, stating that the loss was not covered because Exotic

Motors never "acquired" the Vehicle. Exotic Motors subsequently brought suit against Zurich

for breach of contract and vexatious refusal to pay.

Exotic Motors moved for summary judgment, and Zurich cross-moved for summary

judgment. Zurich provided the following two statements of uncontroverted facts in support of its

motion for summary judgment that coverage should be denied: (1) Exotic Motors never took or

had physical possession over the subject auto, and (2) Exotic Motors never took or had legal title

to the subject auto, as the prospective seller never had good title to give.

The motion court granted summary judgment in favor of Zurich. In its final judgment,

the motion court found that the word "acquired" was not ambiguous. In reaching its decision,

the motion court relied on Shaffer v. Federated Mut. Ins. Co., 903 S.W.2d 600 (Mo. App. S.D.

1995), in which false pretense coverage depending on a similarly-worded policy's use of the

word "acquiring" was denied on the basis of the insured dealership never having acquired the

vehicles where the dealership paid a wholesaler for vehicles that were never delivered. Shaffer

interpreted the ordinary meaning of "acquire" using Webster's Third New International Dictionary, which defined the term as "to come into possession, control, or power of disposal of, often by some uncertain or unspecified means." Id. at 607. Shaffer therefore held that because the insured did not come to possess the vehicles, have control over them, or have the power to dispose of them, the insured never acquired the vehicles and was thus not afforded coverage under the policy. Id. Relying on that Missouri precedent, the motion court determined that because Exotic Motors never gained possession or control over the Vehicle, Exotic Motors never "acquired" the Vehicle under the language of the Policy and thus its loss was not covered by the Policy's False Pretense Coverage provision. Exotic Motors now appeals.

## Point on Appeal

In its sole point on appeal, Exotic Motors argues the motion court erred in granting summary judgment in favor of Zurich because the terms "acquired" and "acquiring" in the Policy are ambiguous and should be construed in favor of coverage.

## Standard of Review

We review a circuit court's grant of summary judgment de novo. Swadley v. Shelter Mut. Ins. Co., 513 S.W.3d 355, 357 (Mo. banc 2017) (internal citation omitted). Interpreting the terms of an insurance policy presents a question of law and is also reviewed de novo. Id.

## Discussion

Because the point on appeal alleges ambiguity in the terms of an insurance policy, we must first determine whether the language of the policy is ambiguous. Allstate Ins. Co. v. Ibrahim, 243 S.W.3d 452, 456–57 (Mo. App. E.D. 2007). Absent an explicit finding of ambiguity, we then proceed in deciding whether coverage exists when the policy language is given its plain and ordinary meaning. Id.

4

"An ambiguity exists when the contract language is duplicitous, indistinct, or uncertain, leaving its interpretation open to different constructions." Foremost Signature Ins. Co. v. Montgomery, 266 S.W.3d 868, 872 (Mo. App. E.D. 2008) (citing Krombach v. Mayflower Ins. Co., 827 S.W.2d 208, 210 (Mo. banc 1992)). "The fact that a term remains undefined in a policy does not necessarily render it ambiguous[.]" Am. Family Mut. Ins. Co. v. Peck, 169 S.W.3d 563, 567 (Mo. App. W.D. 2005) (internal citations omitted). Similarly, "[t]he fact that the parties disagree as to the correct interpretation of insurance policy language does not render the policy ambiguous." Foremost Signature Ins. Co., 266 S.W.3d at 873 (citing Shelter Mut. Ins. Co. v. Ballew, 203 S.W.3d 789, 794 (Mo. App. W.D. 2006)). Further, "[a] court may not use its inventive powers to create an ambiguity where none exists[.]" Id. at 872 (internal quotation omitted). Where an insurance policy's terms are found to be ambiguous, we construe the ambiguity against the insurer. Id. at 872 (citing Krombach, 827 S.W.2d at 210); see also Burns v. Smith, 303 S.W.3d 505, 509–10 (Mo. banc 2010) (reviewing an exclusionary clause for ambiguity, which is strictly construed against the drafter). Where no ambiguity is found, we will enforce an insurance policy according to its terms, applying the plain and ordinary meaning as understood by lay persons buying insurance, "consistent with the reasonable expectations, objectives, and intent of the parties." Foremost Signature Ins. Co., 266 S.W.3d at 871 (internal citations omitted); see also Swadley, 513 S.W.3d at 357 (internal citation omitted).

Here, Exotic Motors asserts that the term "acquire" in the Policy is ambiguous and should be construed in favor of coverage. The Policy provides that "[a]ny 'auto' you have *acquired* is a covered 'auto' under False Pretense Coverage." (emphasis added). The Policy further states that the Insurer "will pay for 'loss' to a covered 'auto' under False Pretense Coverage caused by . . . [y]our *acquiring* an 'auto' from a seller who did not have legal title or authority to transfer

5

ownership of that property." (emphasis added). Exotic Motors argues that a reasonable meaning of the term "acquire" includes "purchasing" and that by wiring the purchase money to the purported seller, Exotic Motors thereby "acquired" the Vehicle under the terms of the Policy. Zurich contends, and the motion court agreed, that the plain meaning of "acquire" does not encompass purchasing the Vehicle. Relying on Webster's definition of "acquire" and judicial precedent interpreting "acquire" in an automobile insurance policy under similar facts in Shaffer, the motion court found the unambiguous plain meaning of "acquire" is to come into possession, control, or power of disposal over. The motion court further found that Exotic Motors did not "acquire" the Vehicle because Exotic Motors never took physical or legal possession of the Vehicle, and thus the Vehicle was not a covered auto under the Policy.

In our de novo review, we find the term "acquire" in the Policy to be unambiguous. First, as the motion court recognized, the alleged ambiguity of "acquire" within an automobile insurance policy's false pretense coverage has been previously addressed by the Southern District. In that case, interpreting a similarly-worded policy provision, Southern District explained:

> To enable plaintiffs to qualify for coverage under A.1.b., it was necessary for plaintiffs to sustain a loss to any auto that resulted from plaintiffs' "acquiring" the auto from a seller who did not have legal title.
>
> Webster's Third New International Dictionary defines "acquire" as follows: "to come into possession, control, or power of disposal of, often by some uncertain or unspecified means."
>
> Setting aside the matter of the [other vehicle claim] for a moment, plaintiffs did not acquire any of the other nine vehicles listed on Exhibits 3 and 5. Plaintiffs did not come into possession of any of them. Indeed, there was no showing that any of them existed. At no time did plaintiffs control any of the nine vehicles. Plaintiffs did not have the power to dispose of any of the nine vehicles. The transactions between plaintiffs and [the seller] with respect to them were void and unlawful. Plaintiffs did not acquire from [the seller] any of those vehicles. They acquired only two pieces of paper, each purporting to list five specific vehicles.

6

> This court holds that there was no coverage under A.1.a. because none of the [ten] vehicles was a "covered auto." This court holds there was no coverage under A.1.b. with respect to nine of the [ten] vehicles, those other than the [other vehicle], because plaintiffs did not "acquire" any of the nine vehicles.

Shaffer, 903 S.W.2d at 603, 607 (denying coverage under an automobile insurance policy for a "'loss' to any 'auto' under False Pretense Coverage that results from your acquiring the 'auto' from a seller who did not have legal title");[2] see also Frank Shoop, Inc. v. TIG Ins. Co., 2007-CA-000691-MR, 2009 WL 874535, at *5 (Ky. App. Apr. 3, 2009) (citing Shaffer, 903 S.W.2d at 607) (analogizing to Shaffer and denying false pretense coverage under a similarly-worded policy defining a covered auto as any acquired auto where the insured car dealer obtained financing for a sale with a broker who provided fraudulent vehicle information, failed to complete the sale, and pocketed the dealer's money). Shaffer offers relevant judicial precedent, yet because "[a] term may be deemed ambiguous in the context of one insurance policy, and not ambiguous in another[,]" we nonetheless look beyond Shaffer to the current context. Am. Family Mut. Ins. Co., 169 S.W.3d at 568 (internal citation omitted).

Here, the Policy refers both to "acquired" vehicles, which are considered covered automobiles under False Pretense Coverage, as well as to the triggering condition for the claim made based on Exotic Motors's "acquiring" the Vehicle from a seller who did not have legal title or authority to transfer ownership of that property. Exotic Motors maintains that because the Policy does not define the word "acquire" then the word is ambiguous. However, the lack of a definition in the Policy for a given term does not mean the term is necessarily ambiguous. Id. at

---

[2] The false pretense coverage provision in Shaffer relevant to the present case, A.1.b, applied to "any auto," while here the Policy's False Pretense Coverage applies to "acquired autos." See Shaffer, 903 S.W.3d at 607. Shaffer also concluded there was no coverage under a different provision of false pretense coverage, A.1.a, because it only provided coverage for "covered 'autos,'" defined as "owned autos; autos left with you on consignment for sale; autos which have been repossessed and are held by you for sale, storage or safekeeping." Id.

7

567 (internal citation omitted). Nor may we create ambiguity where none exists. Foremost Signature Ins. Co., 266 S.W.3d at 872–73 (internal citation omitted); Family Mut. Ins. Co., 169 S.W.3d at 567 (internal citation omitted). Instead, we give undefined terms their plain and ordinary meanings. See Foremost Signature Ins. Co., 266 S.W.3d at 871; see also Peters v. Emp'rs Mut. Cas. Co., 853 S.W.2d 300, 302 (Mo. banc 1993).

As Exotic Motors notes, our inquiry is not to arrive at a technical meaning of "acquire" but rather determine the ordinary meaning of the term. "To determine the ordinary meaning of a term [in an insurance policy], this Court consults standard English language dictionaries." Farmland Indus., Inc. v. Republic Ins. Co., 941 S.W.2d 505, 508 (Mo. banc 1997) (citing Peters, 853 S.W.2d at 303, 303 n.2) (other internal citations omitted). Although Exotic Motors disputes the motion court's reliance on the definitions in Webster's Third New International Dictionary and Black's Law Dictionary, Eleventh Edition, courts do not favor "dictionary shopping" and we do not find that Exotic Motors has justified overturning significant precedent and legal scholarship on the appropriateness of courts using these dictionaries to resolve questions of ambiguity. See id. (citing Peters, 853 S.W.2d at 303, 303 n.2) (noting Peters rejected an insurer's technical definition purportedly used within the insurance industry and instead adopted the definition from Webster's Third New International Dictionary and other standard English language dictionaries); see also State v. Stewart, 560 S.W.3d 531, 538 (Mo. banc 2018) (Draper, J., dissenting) (discussing the Supreme Court of Missouri's recognized use of both Black's Law Dictionary and Webster's Third New International Dictionary from 1993); AAA Laundry & Linen Supply Co. v. Dir. of Revenue, 425 S.W.3d 126, 132 (Mo. banc 2014) (describing Webster's Third as "the institutional dictionary of choice" of the Supreme Court of Missouri); James J. Brudney & Lawrence Baum, Oasis or Mirage: The Supreme Court's Thirst for

Dictionaries in the Rehnquist and Roberts Eras, 55 WM. & MARY L. REV. 483, 529 (2013) (observing that Webster's Third is the dictionary most often cited by Justices of the United States Supreme Court).

Not only is the legal precedent extensive, but Webster's Third New International Dictionary is especially well-suited to the task of determining plain meaning. Specifically, legal scholars have noted that, unlike some dictionaries that solely prescribe "correct" usage, Webster's Third "take[s] a more descriptive approach, recounting actual usage, regardless of whether it is technically correct." Hon. Jack L. Landau, An Introduction to Oregon Constitutional Interpretation, 55 WILLAMETTE L. REV. 261, 280 (2019) (explaining the basis for the Oregon Supreme Court's preference for Webster's Third in interpreting ordinary meaning); see also Thomas R. Lee & Stephen C. Mouritsen, Judging Ordinary Meaning, 127 YALE L.J. 788, 809 (2018) (noting Webster's Third "expressly disavows any attempt to establish a 'hierarchy of importance' among different senses [of word meanings]"). Judicial reliance on a non-technical dictionary like Webster's offers reliability and replicability, two important criteria for ensuring fairness and predictability to litigants in the justice system. These cornerstones of reliability are lacking with internet searches for definitions, as advocated by Exotic Motors. The top hit of an internet browser search is problematic in that the substance of the search is always changing based on the time, location, and user search history, among other unknown criteria in the search engine's black-box algorithm. See Alice A. Wang, Googling for Meaning: Statutory Interpretation in the Digital Age, 125 YALE L.J. FORUM 267, 269, 279–80 (2016) (acknowledging that some have raised concerns about courts interpreting plain meaning using user-generated internet resources like Wikipedia or Urban Dictionary, which may "lack the necessary safeguards to prevent abuse"); see also Lee & Mouritsen, 127 YALE L.J. at 812, 868–

69 (criticizing courts interpreting plain meaning using Google's search algorithms as unscientific in their inability to be replicated and also recognizing that "[t]he law puts limits on judicial analysis of matters that exceed the bounds of the briefing and record in a particular case" including, arguably, corpus linguistics research).[3] Thus, we use Webster's Third to delineate the "definitional possibilities"[4] of the term at issue. See Farmland Indus., Inc., 941 S.W.2d at 508.

Within the context of the Policy providing insurance for vehicles, the ordinary meaning of having "acquired" or "acquiring" a vehicle is not ambiguous. Webster's Third defines "acquire" as "to come into possession, control, or power of disposal of often by some uncertain or unspecified means[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 18 (2002).[5] We acknowledge that Exotic Motors is able to perform an internet and dictionary search and propose an alternative definition of "acquire" in which paying for an item is sufficient to indicate the item was acquired. We reject, however, the proposition that such usage is a common sense, rationale interpretation for "acquire" in an automobile insurance policy or that the Policy language is ambiguous.[6] See Foremost Signature Ins. Co.,

---

[3] Exotic Motors ineffectively directs us to other sources that lack replicability or reliability, such as requesting that this Court "[s]imply Google" the term at issue and providing web addresses without permalinks or time and date attestations. For example, "https://en.oxforddictionaries.com/definition/acquire" is not a reference to the Oxford English Dictionary but instead automatically redirects to lexico.com/definition/acquire, which errantly defines British rather than American usage. Even if we select the American English definition on the site, which here is the same, Lexico describes itself as a new collaboration between Dictionary.com and Oxford University Press. Although Dictionary.com traces its roots to reputable publishers like Random House, American Heritage, and Harper Collins, it is an unpublished online dictionary. Exotic Motors does not persuasively argue how these sources introduce ambiguity nor why a court should rely on them.

[4] Hon. Jack L. Landau, 55 WILLAMETTE L. REV. at 280 (noting dictionaries list "definitional possibilities").

[5] Webster's second definition is "to come to have as a characteristic, attribute, trait, or ability often by sustained effort[.]"

[6] While Exotic Motors maintains that "acquiring" could mean "purchasing" or "buying," the benefit of this comparison is not self-explanatory and does not necessarily aid Exotic Motors's argument, because the plain meaning of "purchase" or "buy" may similarly imply an exchange or completed transaction of paying money **and obtaining** something in return. See WEBSTER'S THIRD 306, 1844 (listing among the definitions of "purchase:" to acquire (real estate) by any means other than descent or inheritance; to obtain (as merchandise) by paying money or its equivalent: buy for a price; to obtain (something desired) by an outlay (as of labor, danger, sacrifice); to constitute the means or medium for buying (something); and defining "buy" as "to get possession or ownership of by giving or agreeing to give money in exchange: purchase").

10

266 S.W.3d at 873 (citing Shelter Mut. Ins. Co., 203 S.W.3d at 794) ("The fact that the parties disagree as to the correct interpretation of insurance policy language does not render the policy ambiguous."). We are not persuaded that "acquiring" a piece of personal property, like a vehicle, presents any confusion giving rise to ambiguity. A vehicle is neither virtual nor intangible, such as stake in a business enterprise or a trade secret. See, e.g., Cent. Tr. & Inv. Co. v. Signalpoint Asset Mgmt., LLC, 422 S.W.3d 312, 322 (Mo. banc 2014) (discussing acquisition of knowledge of a trade secret involving a physical client list). Unlike situations involving intangible concepts that may warrant a broader meaning of "acquire" in their particular contexts, here, the object of acquisition is a vehicle—specifically, a 2015 Mercedes-Benz SL63. Webster's definition of "acquire" has been repeatedly used to determine its ordinary meaning not only for vehicles but also for other tangible things. See, e.g., State ex rel. Broadway-Washington Assocs., Ltd. v. Manners, 186 S.W.3d 272, 275 (Mo. banc 2006) (citing MERRIAM WEBSTER UNABRIDGED DICTIONARY (3rd ed.)) (abrogated on other grounds) (using Webster's definition of "acquire" to interpret its undefined use in a statute concerning eminent domain); State v. Estep, 552 S.W.3d 183, 185 (Mo. App. S.D. 2018) (citing State v. Myers, 386 S.W.3d 786, 794 (Mo. App. S.D. 2012) (en banc) (citing MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2005))) (using Webster's definition of "acquire" to interpret the meaning of "receives" in the criminal statute for receipt of stolen property). The understanding of an ordinary person of what it means to acquire a vehicle is to obtain physical or perhaps even legal possession of it—*how* that possession came to be is the part that "acquire" leaves open, such as through theft. See Citizens Disc. & Inv. Corp. v. Wood, 435 S.W.2d 717, 721 (Mo. App. S.L.D. 1968) (implying theft where "[w]hat he said was that he took possession of it on that day [but] [o]ne may acquire possession of a motor vehicle by means other than that of purchase").

11

Indeed, it is notable that Exotic Motors does not argue that "acquire" is ambiguous because it could mean to receive either physical possession of or legal title to the Vehicle, because Missouri law does recognize a separation of those two concepts. See, e.g., Am. Econ. Ins. v. Paul, 872 S.W.2d 496, 499 (Mo. App. E.D. 1994) (holding that the insured was covered by the policy where the undefined term "acquire ownership" was given its ordinary meaning such that the insured acquired ownership of the vehicle as well as insurable interest therein when she got physical possession of the vehicle, even though the seller failed to notarize her signature when assigning the title); see also Hamilton Music, Inc. v. Gordon A. Gundaker Real Estate Co., Inc., 666 S.W.2d 840, 843 (Mo. App. E.D. 1984) (internal quotation omitted) (using Black's Law Dictionary in a real property case to determine that "acquire" "does not necessarily mean that title has passed" as one can acquire physical possession before acquiring ownership of it). Plainly, Exotic Motors does not point to the separation of legal title and physical possession as a source of ambiguity because the plain and ordinary meaning of "acquired" encompasses both, yet neither are availing to trigger coverage under the Policy because Exotic Motors concedes it neither took legal title to the Vehicle nor physically received the Vehicle.

Further, our determination that "acquire" is not ambiguous does not render the Policy's False Pretense Coverage meaningless. See Allstate Ins. Co., 243 S.W.3d at 457 (internal citation omitted) (noting "proper interpretation of insurance policies requires that we seek to harmonize all provisions of the policy and to avoid leaving some provisions without function or sense"). For example, False Pretense Coverage under the Policy may apply where a dealer's customer drives away with a vehicle during a test-drive or, particularly relevant here, where the insured acquires physical possession but not legal title to the vehicle. See Shaffer, 903 S.W.2d at 606 (discussing situations where false pretense coverage may exist differentiated from where the

12

insured receives neither physical nor legal possession); see also, e.g., Nudi Auto RV & Boat Sales, Inc. v. John Deere Ins. Co., 765 N.E.2d 1163, 1165–66, 1169–72 (Ill. App. 2002) (finding false pretense coverage existed under nearly identical policy language, which the parties agreed presented no ambiguity, where an auto dealer purchased and received physical possession of vehicles from an auto broker who went out of business and never delivered the vehicles' titles, which the auto dealer then had to procure from the auction house itself as the auto broker never had the titles); Heshion Motors, Inc. v. Trinity Universal Ins. Co., 618 P.2d 327, 330 (Kan. App. 1980), judgment aff'd and modified, 625 P.2d 437 (Kan. 1981) (noting coverage may exist for vehicles taken from an insured by means of false pretenses as long as the insured satisfied the exclusionary clause by having had valid title to—or, as modified, being due to receive valid title within fifteen days of delivery of—the covered auto prior to the loss).

Having determined that there is no ambiguity, we enforce the Policy according its terms using their plain and ordinary meanings as understood by laypeople buying automobile insurance, "consistent with the reasonable expectations, objectives, and intent of the parties." Foremost Signature Ins. Co., 266 S.W.3d at 871 (internal citation omitted). Here, the facts of the case underscore the need for Exotic Motors to have demonstrated possession or control over the Vehicle in order for the Vehicle to be a covered auto under the Policy. The summary-judgment record reflects that all negotiations for the Vehicle were made through text, email, or other non-personal contact. The purported seller provided vehicle information to Exotic Motors that was connected to an unrelated third party's vehicle, and ultimately Exotic Motors cannot verify the Vehicle as described and for which he seeks loss coverage ever existed.[7] Critically, Exotic

---

[7] We note that although Exotic Motors is a retailer and wholesaler in the automotive industry who presumably routinely purchases automobile insurance, we employ the standard for a lay person's understanding of purchasing automobile insurance. See Foremost Signature Ins. Co., 266 S.W.3d at 871.

13

Motors admits it had neither physical or legal possession of the Vehicle. Exotic Motors attempted to arrange transport of the Vehicle, which perhaps could have demonstrated control over the Vehicle, but Exotic Motors was unable to do so. Exotic Motors's wiring payment to the purported seller and attempting to arrange for the Vehicle's transport is not evidence that Exotic Motors ever had possession, control, or the power over disposal of the Vehicle under the plain meaning of "acquire."

In denying coverage under the express terms of the Policy, we very much appreciate the unfortunate series of events that led to Exotic Motors's present circumstances and financial loss. Nevertheless, our determination of coverage under the Policy must be based on the express language of the Policy governing the claims between Exotic Motors and Zurich. See Allstate Ins. Co., 243 S.W.3d at 457.

Accordingly, because we find the Vehicle was not a covered auto under the unambiguous plain meaning of "acquire" in the Policy, we hold coverage was properly denied. Point denied.

### Conclusion

The judgment of the motion court is affirmed.

_____
KURT S. ODENWALD, Judge

Philip M. Hess, P.J., concurs.
Lisa P. Page, J., dissents in a separate opinion.

14



# In the Missouri Court of Appeals
# Eastern District

| | | |
|---|---|---|
| EXOTIC MOTORS, | ) | No. ED108090 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Stanley J. Wallach |
| ZURICH AMERICAN INSURANCE CO., | ) | |
| | ) | |
| Respondent. | ) | FILED: March 10, 2020 |

## DISSENT

I respectfully dissent. I would reverse the trial court's grant of summary judgment in favor of Zurich American Insurance Company ("Zurich") against Exotic Motors on their claim for False Pretense Coverage because the term "acquiring" as used in the insurance policy is ambiguous.

Missouri courts, relying on the sound reasoning of Judge Learned Hand, apply the doctrine of *contra proferentem* more rigorously to insurance policies than other contracts, recognizing the difference between the parties in their familiarity with the subject matter. *Burns v. Smith*, 303 S.W.3d 505, 512 (Mo. banc 2010) (citing *Gaunt v. John Hancock Mut. Life Ins. Co.*, 160 F.2d 599, 602 (2d Cir. 1947) (Hand, J.), *followed in Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 211 (Mo. banc 1992)). Therefore, it is well established that:

> [A]n insurance policy, being a contract designated to furnish protection, will, if reasonably possible, be construed so as to accomplish that object and not to defeat it. Hence, if the terms are susceptible of **two possible** interpretations and there is

room for construction, provisions limiting, cutting down, or avoiding liability on the coverage made in the policy are construed most strongly against the insurer.

*Id*. (citing *Farm Bureau Town and Country Ins. Co. of Mo. v. Schmidt*, 751 S.W.2d 375, 376 (Mo. banc 1988)) (emphasis added).  Moreover, "as the drafter, the insurer is in the better position to remove ambiguity from the contract.  When there is an ambiguity, insureds are entitled to a resolution of that ambiguity consistent with their ***objective*** and ***reasonable*** expectations as to what coverage would be provided."  *Id*. (internal quotations omitted) (emphasis in original).

The clause at issue specifically states Zurich "will pay for 'loss' to a covered 'auto' under False Pretense Coverage caused by: . . . [y]our acquiring an 'auto' from a seller who did not have legal title or authority to transfer ownership of that property."  The term "acquiring" is not defined in the policy.  Exotic Motors claims the good faith purchase of the 2015 Mercedes SL63 AMG ("Mercedes") constituted "acquiring" it for purposes of coverage under this clause.  Zurich contends Exotic Motors never took "legal or physical possession" of the Mercedes, thus it did not acquire the vehicle.

A review of the False Pretense clause in the record before us reveals Zurich specifically used the term "possession" in other provisions where it is necessary for coverage.  However, Zurich did not expressly use either "legal or physical possession" in this specific clause, yet asserts the courts should apply one term or the other to their policy.  But, as the insurer, Zurich was in the better position to resolve any ambiguity by expressly so stating as set forth elsewhere within the False Pretense policy that possession was also required for this provision but chose not to do so.  *See Burns*, 303 S.W.3d at 511 (insurer is in the better position to remove ambiguity from insurance contract).

2

Instead, Zurich elected to use "acquire," but did not define the term in the policy. In light of Zurich's failure to expressly state "possession" was necessary for coverage under the False Pretense clause, we look to well-settled precedent which requires our court to apply the meaning that would be attached by an ordinary person of average understanding in determining whether language is ambiguous. *See Maher Bros., Inc. v. Quinn Pork, LLC*, 512 S.W.3d 851, 856 (Mo. App. E.D. 2017) and *Mendenhall v. Prop. & Cas. Ins. Co, of Hartford*, 375 S.W.3d 90, 92 (Mo. banc 2012).

Our court may consult dictionary definitions to ascertain the common meaning of a term if it is not defined in the policy. *See Maher Bros., Inc.,* 312 S.W.3d at 856. However, in this matter the dictionary does not resolve - but actually demonstrates - the term's ambiguity when applied to Zurich's policy. *See id*. Here, as the majority notes, Webster's Third defines "acquire" as "to come into possession, control, or power of disposal of often by some uncertain or unspecified means[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 18 (2002). More specifically, Zurich's own proffered application of this definition as "legal or physical possession" demonstrates the ambiguity in the False Pretense Coverage because the term "possession" itself is ambiguous, as illustrated by the potential for interpretation of the term to include either legal or physical possession, as a party may have legal possession of an item without physical possession and vice versa. In fact, the United States Supreme Court has unequivocally stated, "both in common speech and in legal terminology, there is no word more ambiguous in its meaning than possession." *Nat'l Safe Deposit Co. v. Stead*, 232 U.S. 58, 67 (1914).

As a result of Zurich's failure to state "physical possession" - which is exactly and specifically what the insurer is seeking - requires us to add missing language to their policy, and

this we cannot do. *See Messina v. Shelter Ins. Co.*, 585 S.W.3d 839, 845 (Mo. App. W.D. 2019) ("It is well settled that a court will not add language to an insurance policy."). As the drafter of the policy, Zurich was in the better position to and should have resolved ambiguity in its contract. *Burns*, 303 S.W.3d at 512. When there is an ambiguity, an insured is entitled to resolution of the ambiguity consistent with their ***objective*** and ***reasonable*** expectations regarding coverage. *Id*. (emphasis in original). Exotic Motors' position that it is entirely reasonable to conclude an ordinary person of average understanding would believe the term "acquiring" includes coverage for the good faith purchase of an auto - without actual physical possession of it - when contracting specifically for ***False Pretense coverage*** is a more credible interpretation of the term.

Zurich's reliance on *Shaffer v. Federated Mut. Ins. Co.*, 903 S.W.2d 600 (Mo. App. S.D. 1995) is misplaced because it was not necessary for that court to conduct an ambiguity analysis of "acquiring," and thus does not hold the term unambiguous, nor does it hold the term is equivalent to "physical possession." However, the facts and circumstances in this matter mandate a legal analysis of the term "acquiring" as used in this particular False Pretense policy, which is ambiguous because it is subject to two possible interpretations.

While the coverage at issue in *Shaffer* was similar to the language in this case, the facts are very different. In *Shaffer*, the insured had "only two pieces of paper, each purporting to list five specific vehicles," and "there was no showing that any of them existed." *Id*. at 607. The insurance company specifically declined coverage on the basis of the insured's verbal agreement to purchase the vehicles because there were no "contracts or receipts" evidencing the purchase. *Id*. at 604. As a result, *Shaffer* merely states plaintiffs did not "come into possession" of any of the vehicles. *Id.* at 607. Based on these facts, *Shaffer* holds the plaintiffs did not meet the

4

dictionary definition of "acquire" for the vehicles in question without engaging in an analysis of whether the term was ambiguous. *Shaffer's* holding is appropriate to the particular circumstances and language considered in that case; however, it would be a misinterpretation and misapplication of the Southern District's decision to permanently preclude an analysis of the term "acquire" by strictly applying such a narrow interpretation to every policy thereafter. *See Am. Family Mut. Ins. Co. v. Peck*, 169 S.W.3d 563, 568 (Mo. App. W.D. 2005) ("A term may be deemed ambiguous in the context of one insurance policy, and not ambiguous in another.").

Here, Exotic Motors effectively demonstrated it "acquired" the Mercedes. The trial court's own judgment found as undisputed facts that Exotic Motors was in possession of license plate information and a certificate of title for the Mercedes while negotiating a good faith sale of the Mercedes through a series of e-mails and text messages, stating, "[t]he parties entered into a written Purchase Agreement and Bill of Sale dated July 25, 2017." Furthermore, the trial court specifically found that based upon these documents, Exotic Motors wired money in anticipation of delivery of the Mercedes. The identifying information, negotiation, sale contract, and the ultimate transfer of $90,100.00 for the purchase of the Mercedes constitute significantly more evidence that Exotic Motors "acquired" the Mercedes than the two lists obtained by the insured in *Shaffer*.

Moreover, these circumstances are significantly distinguishable because today, unlike 1995 when *Shaffer* was decided, so many car sales are conducted via the internet. These transactions seldom include physical possession until the conclusion of the purchase process, and are fraught with the peril of a fraudulent conveyance, which is exactly what Exotic Motors was seeking to insure with this policy. Zurich clearly did not take issue with offering such coverage to Exotic Motors and accepting the premiums paid for it. *See Burns*, 303 S.W.3d at 513

5

("Clearly Farmers did not find it absurd to offer such coverage and accept Mr. Smith's premiums for it."). Thus, it is disingenuous for Zurich to now contend this False Pretense coverage would not protect their insured without specific and unambiguous policy language excluding such transactions by expressly requiring "physical possession."

In conclusion, this case presents the exact scenario that any lay person of average understanding would seek to insure against with such a policy. Moreover, as the drafter of the insurance contract, Zurich should have specified that physical possession was a requirement of the policy. Zurich failed to remove the ambiguity in its policy; therefore, Exotic Motors was entitled to a resolution of the ambiguity consistent with the reasonable and objective expectation of coverage pursuant to this policy. *See Burns*, 303 S.W.3d at 512. Thus, I would construe the language in the False Pretense Coverage in favor of coverage and reverse the trial court's grant of summary judgment in favor of Zurich and remand for entry of judgment in favor of Exotic Motors.

_____
Lisa P. Page, Judge

6