

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

SHELTER MUTUAL INSURANCE COMPANY, )
)
)
Appellant, )
)
v. )  WD85527
)
TREVOR HILL, LESLIE HILL, )  Opinion filed: February 20, 2024
LANIE HILL AND SHELBIE )
ALEXANDER, )
)
Respondents. )

**APPEAL FROM THE CIRCUIT COURT OF
RANDOLPH COUNTY, MISSOURI
THE HONORABLE SCOTT A. HAYES, JUDGE**

Division Two:  W. Douglas Thomson, Presiding Judge,
Thomas N. Chapman, Judge and Janet Sutton, Judge

Shelter Mutual Insurance Company ("Shelter") appeals the summary judgment of the Circuit Court of Randolph County ("trial court") holding a minor child ("Daughter") is not a resident of her natural father's ("Father") household for purposes of an insurance policy exclusion.  Shelter raises three points on appeal, arguing the trial court erred in granting summary judgment for Respondents and denying its own motion for summary judgment, because the trial court erroneously

(1) applied Missouri law to the parties' stipulated, uncontroverted facts because such facts establish that an exclusion under the policy applied to bar coverage, (2) relied on facts outside the parties' stipulated, uncontroverted facts and the record as the basis for its summary judgment holding, and (3) applied Missouri law by invoking rules of policy construction instead of applying the plain language of the policy exclusion. We affirm in part and reverse in part and remand for further proceedings.

## Factual and Procedural History[1]

This case was presented to the trial court on the parties' Joint Statement of Undisputed Stipulated Facts. On July 26, 2018, when she was eleven years old, Daughter was injured while riding on an ATV driven by Brother. The ATV was owned by Father and the injury occurred on his property in Randolph County, Missouri. As a result of this incident, "[Daughter] was seriously and permanently injured, including severe and permanent facial scarring and disfigurement, limited vision, PTSD, etc." It was stipulated "that damages resulting from the July 26, 2018 incident exceed $1 million."

About eleven years prior to the incident, Daughter's natural mother ("Mother") and Father had divorced. Since then, Mother has lived in Linn County,

---

[1] "[W]hen reviewing a summary judgment, we may only review the undisputed material facts established by the process set forth in Rule 74.04(c); we do *not* review the entire trial court record." *Alvis v. Morris*, 520 S.W.3d 509, 512 (Mo. App. S.D. 2017) (citations omitted). Accordingly, this Factual and Procedural History consists of the facts relevant to the issues on appeal within the parties' Joint Statement of Undisputed Stipulated Facts, as well as the procedural history found within the legal file. *See Jones v. Am. Fam. Mut. Ins. Co., S.I.*, 632 S.W.3d 482, 484 n.1 (Mo. App. W.D. 2021).

Missouri, while Father has lived in Randolph County since approximately the same time. The divorce judgment granted Daughter's parents joint legal and physical custody of Daughter. A Joint Parenting Plan was put in place which stated that "[t]he parties wish to continue to share the responsibility for the care of their minor child and to each fully participate in all major decisions affecting their child's residence, health, education and welfare." The Parenting Plan also declared that "[t]he parties shall share physical custody as equally as possible and as agreed to between the parties[,]" but provided a custody schedule in the event the parties were unable to agree. The parties followed this custody schedule. For educational purposes only, Mother's residence was designated as Daughter's primary residence. The Judgment of Dissolution denominated Father as the "Non-Residential Parent," meaning the "parent with whom the child is *not* residing[,]" and further pronounced that "[p]rimary physical placement of [Daughter] shall be with Petitioner [Mother], subject to the Respondent's [Father's] rights of reasonable and liberal visitation."[2] (Fourth and fifth alterations in original).

---

[2] We recognize that joint legal and physical custody necessarily provides that both parents have parenting time, as opposed to one parent having visitation and the other having custody as described in the dissolution judgment and the stipulated facts. We note this was corrected in a later modification judgment in which the parties continued their joint legal and physical custody of Daughter, who "shall reside with [Mother] and have parenting time with [Father] pursuant to the 'Joint Parenting Plan.'" Further, and as recognized by § 452.375.5, there are four types of custody dispositions, including joint physical custody and visitation. *See In re Marriage of Swallows*, 172 S.W.3d 912, 913 n.1 (Mo. App. S.D. 2005). This is not a visitation case, but rather a joint custody case. Given the above, and for continuity's sake, we refer to each parent's time with Daughter as parenting time throughout this opinion.

In 2015, the Judgment of Dissolution was modified by the Linn County Circuit Court. The circuit court continued joint legal and physical custody of Daughter with Father and Mother. Father's parenting time continued to be every other weekend, two weeks in the summer, and alternating holidays, but a Wednesday night visit between Father and Daughter was eliminated.

On the date of the ATV accident, a Farmowners Policy issued by Shelter to Father was in effect. In relevant part, the Farmowners Policy includes:

FARMOWNERS INSURANCE POLICY
SPECICAL COVERAGE FORM 3

\*\*\*

DEFINITIONS USED THROUGHOUT THIS POLICY . . .

8. Insured means:

> (a) **You**;
> (b) **Your** relatives residing in **your** household; and
> (c) Any other person under the age of 21 residing in **your** household who is in your care or the care of a resident relative.

\*\*\*

**SECTION II – COMPREHENSIVE PERSONAL LIABILITY PROTECTION**

**COVERAGE E – PERSONAL LIABILITY**

**We** will pay all sums arising out of any one loss which an **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** and caused by an **occurrence** covered by this policy.

\*\*\*

**EXCLUSIONS – SECTION II** . . .

Under Personal Liability **we** do not cover: . . .

4

9. **Bodily injury** to:
a) **You**;
b) **Your** relatives residing in **your** household; and
c) Any other person under the age of 21 residing in **your** household who is in **your** care or the care of a resident relative.

At the time of the July 26, 2018 accident, Daughter lived with Mother in Linn County during Mother's parenting time, and visited Father and Daughter's step-mother ("Step-Mother") in Randolph County during Father's parenting time. Mother and Father lived about an hour away from each other. Daughter visited Father approximately 20% of the time and lived with Mother approximately 80% of the time in the six months prior to the accident. Father's parenting time with Daughter continued to be every other weekend, alternating holidays, and approximately two weeks during the summer. Otherwise, Daughter stayed at Mother's house. Daughter maintained a bedroom at Father's home with limited clothing. She had no key to his home, received no mail at his house, and did not participate in any sports, events, or clubs in Randolph County. Father was several months behind in his monthly child support payments, and accordingly did not pay monthly expenses for Daughter or provide substantial support of Daughter or to Mother's household.

On the date of the accident, "[f]or educational purposes only, [Mother's] residence [was] designated [Daughter's] primary residence," pursuant to the Joint Parenting Plan. Daughter attended school in Linn County, as she had done her entire life. She had a room at Mother's house with the vast majority of her clothing there, had digital keys to the home, and received mail at the house. Daughter was

also "very active in multiple activities in Linn County," including feeding cows and sheep daily as part of her involvement in FFA and 4H, attending church, and being active in the youth group within her parish.

On June 16, 2020, Daughter filed a three-count Petition ("Underlying Suit") by and through Mother as her next friend against Father and Step-Mother. The three counts alleged were negligent entrustment, negligent supervision, and negligently supplying dangerous instrumentality. This Underlying Suit was ultimately voluntarily dismissed without prejudice.

On September 23, 2020, Shelter filed a Petition for Declaratory Judgment against Father, Step-Mother, Daughter, and Mother.[3] The Petition sought, in relevant part, a determination that "there is no insurance coverage under a Farm Owner's Policy issued to [Father.]"[4] Among other facts, Shelter alleged that "[u]nder Missouri law, [Daughter] is a resident of [Father]'s home for purposes of insurance coverage" and that "[t]here is no coverage for the Underlying Suit, under the Shelter Farmowners Policy Personal Liability Coverage, due to that policy's exclusion providing that 'there is no Personal Liability for bodily injury to "[y]**our** relatives residing in **your** household."'" (Last alteration in original). Respondents and Shelter subsequently filed cross-motions for summary judgment, each

---

[3] We note that Brother was listed as a defendant in the "Parties and Jurisdiction" section of the Petition, but not in any other filing in this case nor as a Respondent here on appeal.

[4] Shelter's Petition also sought a determination "that available insurance coverage for Bodily Injury Liability an [sic] Automobile Policy is limited to $25,000.00; and that insurance coverage limits for medical payments coverage under the Automobile Policy are $1,000.00" which is not before us on appeal.

incorporating the parties' Joint Statement of Undisputed Stipulated Facts. The Joint Statement of Undisputed Stipulated Facts did not include a stipulation about the ultimate issue to be decided by the trial court – whether Daughter was residing in Father's household at the time of the accident.

The trial court ultimately found "that under the facts and the law . . . Daughter is not a resident of [Father]'s household and that [Respondents] are entitled to judgment as a matter of law." Accordingly, the trial court granted summary judgment in favor of Respondents and against Shelter on the issues concerning the Farmowners Policy, and correspondingly denied the cross-motion for summary judgment filed by Shelter. The trial court thus decreed that Shelter has a duty to provide insurance coverage for Daughter's claims under the Farmowners Policy. Additionally, the trial court found that insurance coverage is also available under an Automobile Policy issued to Father.

Shelter appeals only the trial court's findings concerning the Farmowners Policy.

**Standard of Review**

Our review is governed by the standard set forth by the Missouri Supreme Court:

> The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo*. In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. Summary judgment is only proper if the

moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law.

*Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020) (quoting *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452 (Mo. banc 2011) (abrogated on other grounds)).

"Because the case was submitted on stipulated facts entered into between the parties in the proceedings before the trial court, '[t]he only question before us is whether the trial court made the proper legal conclusion from the stipulated facts.'" *Jones v. Am. Fam. Mut. Ins. Co., S.I.*, 632 S.W.3d 482, 487 (Mo. App. W.D. 2021) (alteration in original) (quoting *Cady v. Ashcroft*, 606 S.W.3d 659, 665 (Mo. App. W.D. 2020)).

> Generally, an order denying a party's motion for summary judgment is not a final judgment and is therefore not subject to appellate review. *Hussmann Corp. v. UQM Electronics, Inc.*, 172 S.W.3d 918, 922 (Mo. App. E.D. 2005). The denial of a motion for summary judgment, however, may be reviewable when, as in this case, the merits of the motion for summary judgment are "intertwined with the propriety of an appealable order granting summary judgment to another party." *See id.*

*Columbia Mut. Ins. Co. v. Heriford*, 518 S.W.3d 234, 238 n.2 (Mo. App. S.D. 2017) (quoting *Schroeder v. Duenke*, 265 S.W.3d 843, 850 (Mo. App. E.D. 2008)). Here, both motions relied on the application of the same law to the stipulated facts in order to answer the question of whether Daughter is a resident of Father's home; the merits of the motions are thus intertwined.[5] *See Jones*, 632 S.W.3d at 486 n.3. Accordingly, we will review both the grant and denial of summary judgment.

---

[5] Accordingly, we reject Respondents' argument that this appeal should be dismissed due to the multifariousness of Shelter's Points Relied On. Specifically,

## Analysis

Though Shelter raises three points on appeal, our resolution of Shelter's first point on appeal is dispositive. In Point I, Shelter claims,

> [t]he [trial court] erred in granting [Respondents'] Motion for Summary Judgment and denying Shelter's Motion for Summary Judgment because it erroneously applied Missouri law to the parties' stipulated uncontroverted facts, which establish as a matter of law that the household exclusion in Shelter's Farmowners policy issued to [Father] applies to bar Personal Liability coverage under the Farmowners policy for bodily injury sustained by [Daughter], in that [Daughter] was [a] dual resident of her divorced parents' households, [Father] and [Mother] had joint legal and physical custody of [Daughter], the custody and visitation arrangement was permanent, and [Daughter] lived with [Father] regularly, although not continuously, as part of his family unit such that Shelter owes no duty to provide liability coverage for the injuries sustained by [Daughter] under Shelter's Farmowners policy issued to [Father].

Shelter thus argues that the parties' stipulated uncontroverted facts required the trial court to conclude, as a matter of law, that the household exclusion in the Farmowners Policy precluded coverage for Daughter's injuries. Shelter's contention requires us to interpret the Farmowners Policy.

> As with any other contract, the "interpretation of an insurance policy is a question of law that this Court also determines *de novo*." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007). "In construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance. . . ." *Id.* (quotation marks omitted). "Absent an ambiguity, an insurance policy must be enforced according to its terms." *Id.* Notably, "[w]here the policy language has already been judicially defined," no ambiguity exists, and "the judicial definition[] assigned to [a] policy term [is] controlling." *Walden v. Smith*, 427 S.W.3d 269, 274 (Mo. App. 2014).

---

Respondents contend Shelter's Points Relied On "assert challenges to separate rulings – that the trial court erred in granting [Respondents'] motion for summary judgment and also erred in denying Shelter's motion for summary judgment."

*Griffitts v. Old Republic Ins. Co.*, 550 S.W.3d 474, 478 (Mo. banc 2018) (alterations in original).

"'An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy.'" *Seaton v. Shelter Mut. Ins. Co.*, 574 S.W.3d 245, 247 (Mo. banc 2019) (quoting *Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340, 344 (Mo. banc 2015)). Ambiguous language also exists when the language "'is reasonably open to different constructions.'" *Seeck*, 212 S.W.3d at 132 (quoting *Gulf Ins. Co. v. Noble Broad.*, 936 S.W.2d 810, 814 (Mo. banc 1997)). "Any ambiguity is resolved in favor of the insured." *Swadley v. Shelter Mut. Ins. Co.*, 513 S.W.3d 355, 357 (Mo. banc 2017) (citing *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009)). Yet, "[c]ourts may not create an ambiguity when none exists." *Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins.*, 531 S.W.3d 508, 511 (Mo. banc 2017) (citing *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007)).

Here, the Farmowners Policy obligates Shelter to pay "all sums arising out of any one loss which an **insured** becomes legally obligated to pay as damages because of **bodily injury** . . . caused by an **occurrence** covered by this policy." However, this coverage for the insured's personal liability is expressly excluded for "**Bodily injury** to: a) **You**; (b) **Your** relatives residing in **your** household; and c) Any other person under the age of 21 residing in **your** household who is in **your** care or the care of a resident relative." "**Insured**" is defined by the policy using precisely the same language as the aforesaid exclusion. It is thus plain that the

10

exclusion to coverage for an insured's personal liability is intended to be co-extensive with the definition of the term "insured," such that the policy will not provide coverage for bodily injury to an "insured."

The question thus framed by this case is whether Daughter was barred from recovering under the policy by the exclusion to coverage because Daughter was an "insured" under the Farmowners Policy. Both parties agree that the controlling language in both the definition of "insured," and in the exclusion provision, is in subpart (b) of both provisions which refers to "**Your** relatives residing in **your** household." Though "your" is defined in the policy to mean "Father," the terms "relative," "residing in" and "household" are not defined therein. We are directed, however, to give these terms their plain and ordinary meaning, if possible. *Doe Run Res. Corp.*, 531 S.W.3d at 511.

A "relative" is commonly understood to include a person who is related by blood, marriage, or adoption. Daughter is clearly one of Father's relatives, employing this common understanding of the term.

The term "household" has, for purposes of insurance contracts, been defined as

> a collection of persons, whether related by consanguity [sic] or affinity or not related at all but who live or reside together as a single group or unit which is of a permanent and domestic character, with one head, under one roof or within a single curtilage; who have a common subsistence and who direct their attention toward a common goal consisting of their mutual interest and happiness.

*Watt by Watt v. Mittelstadt*, 690 S.W.2d 807, 816 (Mo. App. W.D. 1985). Further, the *Watt* court "declared that the term 'household' is found to be a term which is

11

not ambiguous within and for the purposes of 'homeowners' insurance policies."[6]

*Id.*

That leaves the term "residing in," which is also undefined by the Farmowners Policy. Our courts have held that "residing" is a term that does not have an absolute or commonly understood meaning, such that the definition of the term is "dependent upon the facts of each case." *Am. Fam. Mut. Ins. Co. v. Hoffman ex rel. Schmutzler*, 46 S.W.3d 631, 634 (Mo. App. W.D. 2001) (citing *Columbia Mut. Ins. Co. v. Neal*, 992 S.W.2d 204, 209-10 (Mo. App. E.D. 1999)). However, as is evident by the preposition "in," the terms "residing in" and "household" must be read in conjunction with one another and in context. Clearly, "household" gives context to "residing" as it addresses where Daughter must reside in order that the exclusion apply. "Words, phrases, and provisions in an insurance contract must be examined in the context of the policy as a whole and are not to be interpreted in isolation." *Mendelson v. McLaughlin*, 660 S.W.3d 386, 392 (Mo. App. E.D. 2022) (citation omitted).

---

[6] We recognize *Liberty Mut. Ins. Co. v Havner*, 103 S.W.3d 829, 833 (Mo. App. W.D. 2003) has stated the *Watt* definition is itself ambiguous. A thoughtful reading of *Havner*, however, notes the *Havner* court primarily takes issue with, and only discusses, the word, "curtilage." *Id.* at 833-34. It does not question *Watt*'s reference to a group of persons "under one roof." *Id.* In *Havner*, the grandson of insureds did not live in insureds' home nor within the curtilage of said home, but rather in another house on insureds' property, and thus was not a resident of insureds' household. *Id.*

We also note *Havner* appears to be an outlier in its decision, as detailed further in the concurrence hereto. Further, if *Havner*'s declaration that "household" is ambiguous when undefined in a policy, *Havner*, 103 S.W.3d at 833, is to be understood as a declaration that any clause utilizing the term "household" is ambiguous, then this declaration from *Havner* would conflict with a prior Missouri Supreme Court case indicating that an exclusion clause containing the word "household" was unambiguous. *See Am. Fam. Mut. Ins. Co. v. Ward*, 789 S.W.2d 791, 792, 796 (Mo. banc 1990).

We are left then with the task of interpreting the Farmowners Policy for the purpose of determining coverage (a question of law pursuant to *Griffitts*, 550 S.W.3d at 478), and to apply terms that are not defined in the Farmowners Policy, and one whose definition has been held by our courts to be inherently dependent on the facts of each case. *Countryside Cas. Co. v. McCormick*, 722 S.W.2d 655, 658 (Mo. App. S.D. 1987) ("The question of residence is one of fact.") (citations omitted). Shelter argues that the stipulated facts require the conclusion that Daughter resided in both Mother's and Father's households, and that because the occurrence giving rise to Daughter's bodily injury occurred while she was "residing in" Father's household, the exclusion in the Farmowners Policy operates to deny coverage for those injuries. Respondents do not quarrel with the premise that the facts in a particular scenario may support finding that a person resides in more than one household. *See Pruitt v. Farmers Ins. Co.*, 950 S.W.2d 659, 663 (Mo. App. S.D. 1997) ("This court has also acknowledged the possibility that a person may be a 'resident' of more than one place for purposes of insurance coverage.") (citing *Countryside*, 722 S.W.2d at 659). However, Respondents argue that the stipulated facts do not support the conclusion that Daughter was residing in Father's household at the time of the occurrence giving rise to her bodily injuries, such that the household exclusion in the Farmowners Policy does not operate to deny coverage.

"While the insured bears the burden of proving coverage under an insurance policy, the insurer bears the burden of showing that a policy exclusion precludes

13

coverage for a particular loss." *Messina v. Shelter Ins. Co.*, 585 S.W.3d 839, 843 (Mo. App. W.D. 2019) (emphasis removed) (citation omitted). "An insurance company, relying on an exclusion in a policy, has the burden of proving facts which make the exclusion applicable." *Neal*, 992 S.W.2d at 209 (citation omitted). When potential application of the "household exclusion" in a liability policy is triggered by a scenario involving a child of divorced parents, Missouri courts have not ascribed a settled definition to the term "residing in," but have articulated factors that are relevant to resolving the factual question of whether a child resides with only one or both parents. *Countryside*, 722 S.W.2d at 657-59; *Hoffman*, 46 S.W.3d at 634-36.[7] Missouri courts have regularly read the terms "residing" and "household" in context with one another in determining whether an individual is a resident of a particular household. *See Hoffman*, 46 S.W.3d at 634-35; *Countryside*, 722 S.W.2d at 657-58.

In this case, we conclude that the language of the contract is plain and unambiguous. This comports with Missouri Supreme Court precedent indicating that an exclusion clause utilizing the terms "residing" and "household" was "unequivocal and unambiguous" and "not subject to construction or interpretation." *See Am. Fam. Mut. Ins. Co. v. Ward,* 789 S.W.2d 791, 792, 796 (Mo. banc 1990) (exclusion stating "[b]odily injury to any person injured while operating your insured car or for bodily injury to any person related to and residing

---

[7] Had the Farmowner's Policy defined "reside," we would have utilized such definition and would not resort to utilizing the *Countryside* analysis.

in the same household with the operator[,]" is "unequivocal and unambiguous and is not subject to construction or interpretation.").[8]

In *Countryside*, a five-year-old child was fatally injured as a result of an automobile accident in which she was a passenger in an uninsured vehicle operated by her mother's husband. 722 S.W.2d at 655. The child's mother and biological father were divorced. *Id.* The issue before the Southern District was whether the father was entitled to benefits under a provision of an uninsured motorist automobile policy, resolution of which depended "on whether [the child] was 'a relative' of [the father], who was the named insured." *Id.* The policy at issue had defined "relative" as "a person related to the named insured . . . by blood . . . and who is a resident of and actually living in the same household as the name insured . . . ." *Id.* at 656.[9]

---

[8] That said, we note that there appears to be uncertainty regarding whether, based on the underlying evidence, the facts indicate that Daughter was residing in Father's household. This type of uncertainty, that may arise with regard to the application of the contract language to the facts, has at times been referred to as a latent ambiguity – when the language of the contract is plain but may become uncertain upon the application of the language to the facts. *See Havner*, 103 S.W.3d at 833 (citing *Gen. Am. Life Ins. Co. v. Barrett*, 847 S.W.2d 125, 131 (Mo. App. W.D. 1993)). In the context of whether a person resides in the household of another, this type of uncertainty – which is not a matter of uncertainty in the contract language but rather a matter of uncertainty as to whether the underlying facts trigger particular contract language – has regularly been held to present a question of fact for the trier of fact. *Countryside*, 722 S.W.2d at 658; *Hoffman,* 46 S.W.3d at 634 ("The question of whether a person is a resident of a particular household is one of fact.").

[9] In discussing the interplay between the terms "a resident of" and "actually living in," the Southern District explained that "reside" and "live" are synonymous terms, stating "'the conjunctive use of both terms in the policy definition is simply repetitive and cumulative and adds nothing in meaning or effect.'" *Countryside*, 722 S.W.2d at 659 (quoting *Clarkson v. MFA Mut. Ins. Co.*, 413 S.W.2d 10, 12-13 (Mo. App. 1967)).

The Southern District provided context for its analysis by stating "[w]hen a separation is clearly permanent, the courts almost always examine the circumstances with a view to evaluating whether the nature of the relationship between the injured child and the non-resident parent at the time of the accident justifies an extension of coverage." *Id.* at 657 (quoting WIDISS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE, 2nd ed., vol. 1, § 4.13). The court then stated that "[t]he *most significant factor* in determining the residence of the child is a judicial determination awarding custody." *Id.* (emphasis added) (quoting WIDISS). The court also applied two theories provided in our Supreme Court's decision in *Cobb v. State Sec. Ins. Co.*, 576 S.W.2d 726 (Mo. banc 1979) to be utilized in determining residency, to wit: "One theory examines the length of time the parties intended to remain in the home and whether the arrangement is permanent or temporary. . . . The other theory focuses on the functional character of the arrangement or whether the parties function as a family unit under one management[.]" *Id.* at 658 (quoting *Cobb*, 576 S.W.2d at 738).

In applying these factors, the Southern District determined the child was a resident of her father's household and therefore an insured under the policy, entitling the father to benefits. *Id.* at 658-59. While there were certain facts that tended to support the opposite finding, such as the award of legal custody to the mother, the court found that the following factors in the aggregate supported its determination:

> [The child] was only five years old at the time of her death; her divorced parents were still living within 25 miles of each other although each was maintaining a separate household; the father had been awarded reasonable rights of visitation under the divorce decree and he was current in his payments of weekly child support for [the child]; [the child] spent some time in her father's home while [the mother and the mother's husband] lived in Blytheville; [the child] and her father had a good relationship and there was testimony that she spent "at least one full week, the weekends, a few weeks" in the household of her father; [the child] came very regularly to spend the night at her father's house; she came at "every other week" intervals; [the child] had her own bedroom at her father's house and [she] kept "permanent clothing" or a separate wardrobe at her father's house; [the child] was with her father "as much or more than she was with [her mother]." [The child] spent "as much time" in her father's residence as she did in her mother's residence.

*Id.* at 658 (second-to-last alteration in original).

With respect to *Cobb*'s permanency theory, the court specifically found that "[t]he frequent visits of [the child] to the home of her father, where she had her own wardrobe and personal belongings in her own bedroom, were likely to be a 'permanent arrangement.'" *Id.* at 659 (citation omitted). And, concerning the family unit theory, the court stated,

> [The child] and her father continued to function as a family unit, although a similar relationship existed between [the child] and her mother. [The child] and her father lived together, regularly although not continuously, as a family in a closely knit group and they dealt with each other informally and not at arm's length.

*Id.* (citation omitted). The court found that the record before it "justified the trial court in finding that [the child] was a resident of, and 'actually living in,' two separate households[.]" *Id.* The court concluded by asserting "[t]he policy did not require that [the father]'s residence be [the child]'s 'sole' residence, or even her 'principal' residence or her residence 'most of the time.'" *Id.*

17

In *Hoffman*, we similarly addressed the factual question of a child's residency in the face of a divorce, though in the context of determining the application of an exclusion to coverage. 46 S.W.3d at 633-34. In *Hoffman*, we acknowledged just as the Southern District did in *Countryside*, that the most significant factor in determining with whom a child resides is the judicial determination of custody. *Id.* at 635. We further recognized that the factors pertaining to both *Countryside* standards – permanency and family unit – must be evaluated to determine whether the child was a resident relative, such that an exclusion would apply to bar coverage. We stated, "[T]he court in *Countryside* applied the two standards articulated in *Cobb* – whether the arrangement was permanent or temporary, and whether the parties functioned as a family unit – to determine that the child was, in fact, a resident of the non-custodial parent's household." *Id.* (citing *Countryside*, 722 S.W.2d at 658). *See also e.g., Neal*, 992 S.W.2d at 211 (in determining whether a decedent was a resident of his grandparents' household for purposes of a policy exclusion, the Eastern District stated "the courts, faced with similar determinations, have examined whether the person had become an integrated part of the family and whether the person's stay was temporary[,]" i.e., a family unit standard and a permanency standard).

The parties agree that the *Countryside* factors must be considered to resolve whether Daughter was residing with both Father and Mother, or was residing only with Mother. It is plain, in fact, that the Joint Statement of Undisputed Stipulated Facts the parties presented to the trial court was purposefully crafted around the

18

*Countryside* factors. The trial court was thus required to determine whether the stipulated facts supported the entry of summary judgment as a matter of law in favor of either party.

Though the stipulated facts are comprehensive, the ultimate factual determination required in this case – whether Daughter is, or is not, a resident of Father's household – is not stipulated to by the parties. In fact, though the parties stipulated to facts that are relevant to making this ultimate factual determination, it is plain from the competing summary judgment motions that the ultimate factual determination was contested, and thus remained a material factual matter in dispute.[10] As such, despite a comprehensive stipulation of facts, the entry of summary judgment as a matter of law in favor of either party is not permitted here. Facts, whether stipulated or uncontroverted, do not entitle a party to summary judgment unless those facts support the entry of summary judgment as a matter of law. The stipulated facts in this case do not support the entry of summary judgment as a matter of law. This is best evidenced by the fact that in its grant of summary judgment to Daughter, the trial court first resolved a genuine issue of material fact in dispute by finding that Daughter was not a resident of Father's household at the time of her injury, before drawing the legal conclusion that the Farmowners Policy provided coverage for Daughter's injury. This was error.

_____

[10] Indeed, as we note in the Factual and Procedural History, Daughter at various times "lived with," "visited," and "stayed at" the home of one of her parents. These quoted words and phrases were taken directly from the Joint Statement of Undisputed Stipulated Facts of the parties. Notably absent in these uncontroverted, stipulated facts is the word, *resided*, and more specifically, *where* Daughter resided.

Stipulated facts that may be relevant to resolving a contested ultimate fact do not render the ultimate fact a question of law. *See e.g., McHenry v. Claspill*, 545 S.W.2d 690, 693 (Mo. App. 1976) (holding that "when a case comes to the reviewing court on stipulated facts, review is made to determine whether judgment is a proper legal conclusion upon the facts stipulated, ***provided that all ultimate facts or factual inferences have been stipulated***") (emphasis added) (*cited with approval in Mo. Highway & Transp. Com'n v. Sample*, 702 S.W.2d 535, 536 (Mo. App. E.D. 1985)).

Because a material fact, indeed the ultimate fact at issue in this case, is in dispute, that dispute must be resolved in a judgment on the merits and not by summary judgment. This procedural difference is of critical importance here, as our standard of review following a trial on the merits of contested factual issues resolved by a trial court is not *de novo*, but is instead pursuant to *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). And, where a trial on the merits is benefitted by stipulated facts that do not include a stipulation as to the ultimate fact, our review on appeal of the ultimate fact is not *de novo* (as would apply to a question of law), but is instead deferential review. *See Graue v. Mo. Prop. Ins. Placement Facility*, 847 S.W.2d 779, 782 (Mo. banc 1993) (holding after trial on merits, standard of review is pursuant to *Murphy v. Carron*, and that "[w]hen the record is stipulated but not all ultimate facts or factual inferences have been conceded, this Court reviews the stipulated facts in the light most favorable to the

respondent and disregards inferences favorable to the appellant") (citations omitted).

Further, reversal and remand of this case for further proceedings is required by *Hoffman*, where we reversed the grant of summary judgment in favor of the insurer on the issue of whether an injured party was a "resident" of the policyholder's household at the time of the injury, noting that "[t]he trial court in *Countryside* made its findings on [the *Countryside* factors] **and its determination of the child's residency** after a trial." 46 S.W.3d at 635 (emphasis added). We then held that it was therefore error "to rule in favor of [the insurer] on its motion for summary judgment," because to do so, "the trial court had to resolve [] factual disputes [regarding the *Countryside* factors] **to make the ultimate finding of fact in this case** – that [the injured person] was a resident of [both parents'] households."[11] *Id.* at 636 (emphasis added).

Though evidence about the *Countryside* factors was in dispute in *Hoffman*, and is instead largely if not wholly stipulated to here, the ultimate fact in dispute which remained to be determined in *Hoffman* is the ultimate fact in dispute which remains to be determined in this case. Plainly, the ultimate fact here, whether Daughter is, or is not, a resident of Father's household, is not uncontroverted or a

---

[11] Thus, *Hoffman* and *Countryside*, though applying the same factors for residency even though they are an exclusion case and a coverage case, respectively, are treated quite differently upon appellate review due to the procedural posture upon which they were presented to the appellate court. *Countryside* was a declaratory judgment action based on stipulated facts and a brief evidentiary hearing before the court, and thus applied a deferential standard of review, *infra*, while *Hoffman* presented in the same fashion as the case at hand, as competing summary judgment motions subject to *de novo* review.

matter of stipulation between the parties. Rather, the parties have agreed to a litany of facts, all of which are useful in determining the ultimate fact, but leave the determination of the ultimate fact for the trial court.[12] Trial courts are not permitted to resolve factual disputes in summary judgment proceedings. *Pruitt*, 950 S.W.2d at 665 ("'There may be no summary disposition of any disputed factual matters.'") (quoting *Int'l Mins. v. Avon Prods.*, 817 S.W.2d 903, 906 (Mo. banc 1991)).[13]

## Conclusion

For the foregoing reasons, the trial court's judgment concerning the Farmowners Policy is reversed, and this matter is remanded to the trial court for further proceedings. The portion of the trial court's judgment concerning the Automobile Policy, which was not appealed by Shelter and thus not at issue on this

---

[12] Similarly, in *Columbia Mut. Ins. Co. v. Heriford*, 518 S.W.3d 234, 244 (Mo. App. S.D. 2017), both parties failed to recite material facts regarding ownership of a vehicle and residence of parties in their statement of undisputed material facts. Columbia miscategorized "selected evidence as material facts that . . . [only] *inferentially*[] supports Delcia's non-ownership of the truck and Leslie's non-residency with Delcia." *Id.* at 243 (emphasis added) (footnote omitted).

> Because each party failed to properly allege in their respective SUMF either the existence or non-existence of Delcia's ownership of the truck and Leslie's residency or non-residency with Delcia as material facts, in accordance with the requirements of Rule 74.04(c), neither made a prima facie showing of a right to judgment as a matter of law. The lack of such a showing precludes the entry of summary judgment for either party.

*Id.* at 244 (citation omitted).

[13] To be clear, we are not holding that the trial court arrived at the wrong factual conclusion on the issue of Daughter's residency. Nor are we holding that additional evidence is required over and above the stipulated facts to permit the trial court to resolve on the merits the ultimate fact in dispute in this case. Rather, we are simply holding that when an ultimate factual determination remains in dispute, summary judgment is not a proper procedure for resolution of that contested fact.

appeal, is not affected by this opinion. The trial court's judgment is therefore affirmed in part, and reversed and remanded in part.

_____
W. DOUGLAS THOMSON, JUDGE


Judge Sutton concurs.
Judge Chapman concurs in a separate concurring opinion.



# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| SHELTER MUTUAL INSURANCE COMPANY, ) | |
| ) | WD85527 |
| Appellant, ) | |
| v. ) | FILED: |
| ) | |
| TREVOR HILL, LESLIE HILL, ) | February 20, 2024 |
| LANIE HILL, AND SHELBIE ) | |
| ALEXANDER, ) | |
| ) | |
| Respondents. ) | |

## CONCURRING OPINION

I concur in the result of the majority opinion. Missouri courts have long

considered the question of whether a person resides in the household of another

for purposes of insurance contracts to be a question of fact. *See Am. Fam. Mut.*

*Ins. Co. v. Hoffman ex rel. Schmutzler,* 46 S.W.3d 631, 634 (Mo. App. W.D. 2001)

("The question of whether a person is a resident of a particular household is one of

fact."); *Countryside Cas. Co. v. McCormick*, 722 S.W.2d 655, 658 (Mo. App. S.D.

1987) ("The question of residence is one of fact."); *Am. Fam. Mut. Ins. Co. v. Auto.*

*Club Inter-Insurance Exch.*, 757 S.W.2d 304, 306-07 (Mo. App. W.D. 1988)

(affirming jury finding that 16-year old son of divorced parents did not "live in the

household of" his custodial parent (father) or "live with" his non-custodial parent

(mother)); *Mission Ins. Co. v. Ward*, 487 S.W.2d 449, 450-51 (Mo. banc 1972) (finding "as a fact" that father and son were not "members of" grandfather's "household" because their stay was temporary);

[1] *Reed v. Am. Std. Ins. Co. of Wisconsin*, 231 S.W.3d 851, 853 (Mo. App. W.D. 2007) ("Whether a person lived in another's household is a question of fact."); *Pruitt v. Farmers Ins. Co., Inc.*, 950 S.W.2d 659, 665 (Mo. App. S.D. 1997) ("Residence is a question of fact.").

In this case, both parties rely on the same stipulated facts, and both parties argue that the stipulated facts establish that they are entitled to summary judgment as a matter of law. In this scenario, remand may seem a peculiar result; however, the parties did not stipulate as to whether the child was residing in Father's household. If this question is one of fact, as the authorities repeatedly indicate, and if conflicting but reasonable inferences can be drawn from the stipulated facts to answer this ultimate question of fact, as is the case based on the facts stipulated in this matter, then remand is the appropriate result so that the trier of fact can decide which of a number of conflicting yet reasonable inferences are to be drawn from the stipulations to answer the ultimate question of whether the child was residing in Father's household.

At the same time, I recognize that the approach taken by Missouri courts to treat this issue as a question of fact may lead to (or has already produced)

---

[1] *Ward* applied a standard of review that is no longer applicable. *Ward*, 487 S.W.2d at 451 ("In this court-tried case we review the record upon both the law and the evidence, determine the weight and value to be given to the testimony, and make our own findings of fact.").

uncertainty in the law. I also recognize tension between the notion that this question is one of fact, as the authorities have indicated, and the principle that questions of coverage are generally questions of law. *See D.R. Sherry Constr., Ltd. v. Am. Fam. Mut. Ins. Co.*, 316 S.W.3d 899, 902 (Mo. banc 2010) ("As with any other contract, the interpretation of an insurance contract is generally a question of law, particularly in reference to the question of coverage."). Nevertheless, whether the child of divorced parents resides in one or both of their households has always been considered a question of fact. *Hoffman*, 46 S.W.3d at 634; *Am. Fam. Mut. Ins. Co.*, 757 S.W.2d at 306-07; *Countryside*, 722 S.W.2d at 658. However, when the same contract language may, on the same set of underlying facts, produce conflicting results, then continuing to consider the issue to be one of fact may perpetuate a lack of certainty between parties as to the terms of the contract they are entering and a lack of predictability in the law. Although I do not disagree with the result of the majority as there is ample support for its result, I write separately to address some of the reasons for this uncertainty and to consider possible alternatives.

## I.

Shelter Mutual Insurance Company ("Shelter") filed a petition for declaratory judgment that alleged, *inter alia*, that Daughter resided in Father's household at the time of her injuries such that an exclusion in Father's "Farmowners Insurance Policy" precluded coverage under the policy. Father's policy indicates that coverage would be excluded if Daughter was "residing in"

3

Father's "household." Shelter had the burden of establishing that the policy exclusion precluded coverage. *See Messina v. Shelter Ins. Co.*, 585 S.W.3d 839, 843 (Mo. App. W.D. 2019).

Father, along with the other named defendants,[2] moved for summary judgment and attached to the motion a joint statement of stipulated facts. Shelter also moved for summary judgment on the same set of stipulated facts.

The stipulated facts are as follows. Mother and Father divorced shortly after Daughter was born. The judgment in the divorce proceedings provided that Mother and Father would have joint physical and joint legal custody and that Mother's residence would be Daughter's primary residence for educational purposes only. Per the judgment, Father was identified as the "Non-Residential Parent." The judgment provided that the primary physical placement of child was to be with Mother. In 2015, the judgment was modified. The judgment of modification provided that Mother and Father were to retain joint legal and joint physical custody of Daughter, that Daughter's residence was to continue to be that of Mother, and that Father was to have parenting time pursuant to the parenting plan. Following the divorce, Mother and Father lived in separate counties over an hour apart. Daughter attended school in Mother's county of residence.

---

[2] There were other named defendants in the petition for declaratory judgment that jointly litigated the summary judgment proceedings. For ease of reference, I simply refer to the collective defendants as "Father" when discussing the joint litigation of the defendants to the declaratory judgment action.

On July 26, 2018, Daughter suffered serious and permanent injuries while visiting Father's property. On July 26, 2018, Daughter "lived with her Mother" in Mother's county of residence. At the time of the incident, Daughter would periodically visit Father on weekends and would spend approximately two weeks with Father during the summer. The rest of the time Daughter stayed at Mother's house. In the six months prior to the incident, Daughter lived with Mother approximately 80% of the time and visited Father approximately 20% of the time. Daughter had keys to Mother's home but did not have keys to Father's home. Daughter received mail at Mother's home including mail from her paternal relatives. Daughter did not receive mail at Father's house. Mother had primary custody of Daughter on the date of the incident. On the date of the incident, Father did not provide substantial support of Daughter. On the date of the incident, Father did not pay for any monthly expenses for Daughter and was several months behind in monthly child support. At the time of the incident, Daughter maintained a room at her Mother's home with the vast majority of her clothing kept there, while also maintaining a bedroom at Father's house with limited clothing there. Daughter was very active in multiple activities in Mother's county of residence and did not participate in activities in Father's county of residence.

Father's motion for summary judgment argued that the stipulated facts established that Daughter was not residing in his household as a matter of law. Father's motion relied heavily on *Countryside Cas. Co. v. McCormick*, 722 S.W.2d 655, 657-58 (Mo. App. S.D. 1987), and argued that an analysis of the factors in

5

*Countryside* established that Daughter did not reside with Father as a matter of law. Father also argued that the Farmowners Policy did not define "residing" and therefore the term was ambiguous, such that the exclusion should be construed in favor of the insured so as to provide coverage under the policy.

Shelter argued that the stipulated facts established that Daughter was residing in Father's household as a matter of law. Shelter also relied primarily on *Countryside*. Shelter noted that *Countryside* indicated that a child of divorced parents could be a resident of two separate households, and argued that the factors identified in *Countryside* established that Daughter resided in Father's household as a matter of law. *See Countryside*, 722 S.W.2d at 658.

Thus, in moving for summary judgment, both parties relied primarily on *Countryside*. Both parties' briefing indicated that the question of residence was one of fact. *See Countryside*, 722 S.W.2d at 658 ("The question of residence is one of fact.").

At the motion hearing, both parties represented to the trial court that the issue could be resolved as a matter of law because the facts were stipulated and there were cross-motions for summary judgment.

With respect to Father's Farmowners Insurance Policy, the trial court found in favor of Father on his motion for summary judgment. On appeal, Shelter argues that the trial court erred in granting summary judgment to Father.

## II.

"As with any other contract, the interpretation of an insurance contract is generally a question of law, particularly in reference to the question of coverage." *D.R. Sherry Constr., Ltd. v. Am. Fam. Mut. Ins. Co.*, 316 S.W.3d 899, 902 (Mo. banc 2010). Generally, an issue of coverage becomes a fact question "only when the court determines that the contract is ambiguous and that there exists a genuine factual dispute regarding the intent of the parties." *Id.* (citing *Graham v. Goodman*, 850 S.W.2d 351, 354 (Mo. banc 1993)). "When interpreting an insurance policy, this Court gives the policy language its plain meaning, or the meaning that would be attached by an ordinary purchaser of insurance." *Doe Run Res. Corp. v. Am. Guar. & Liab. Ins.*, 531 S.W.3d 508, 511 (Mo. banc 2017) (citation and quotation omitted). "If the policy language is clear and unambiguous, it must be construed as written." *Id.* "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language of the policy. Language is ambiguous if it is reasonably open to different constructions." *Swadley v. Shelter Mut. Ins. Co.*, 513 S.W.3d 355, 357 (Mo. banc 2017) (quoting *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007)). "Any ambiguity is resolved in favor of the insured." *Id.* However, "[c]ourts may not create an ambiguity when none exists." *Doe Run*, 531 S.W.3d at 511. "Notably, where the policy language has already been judicially defined, no ambiguity exists and the judicial definition assigned to a policy term is controlling." *Griffitts v. Old*

7

*Republic Ins. Co.*, 550 S.W.3d 474, 478 (Mo. banc 2018) (quoting *Walden v. Smith*, 427 S.W.3d 269, 274 (Mo. App. W.D. 2014) (brackets and quotes omitted).

The insurance company has the burden of establishing an exclusion applies. *Burns v. Smith*, 303 S.W.3d 505, 510 (Mo. banc 2010). Exclusionary clauses are strictly construed against the drafter. *Id.*

## III.

Before going on to analyze the issues in this case, I first provide a backdrop of the relevant case law, as Missouri Courts have long struggled with the definition of terms such as "residence" and "household" when left undefined in insurance policies. *See, e.g., Watt by Watt v. Mittelstadt*, 690 S.W.2d 807, 815-16 (Mo. App. W.D. 1985).[3]

In 1979, in *Cobb v. State Sec. Ins. Co.*, 576 S.W.2d 726 (Mo. banc 1979), the Missouri Supreme Court addressed how to interpret the term "household" in an insurance contract and stated:

> "Household" is a chameleon like word. The definition depends on the facts of each case. It is difficult to deduce any general principles. One theory examines the length of time the parties intended to remain in the home and whether the arrangement is permanent or temporary. The other theory focuses on the functional character of the arrangement or whether the parties function as a family unit under one management.
>
> Although for different purposes the meaning of the word may differ, "household" is a word to describe a close relationship, varying in

---

[3] Many of the cases highlighted below are so factually dissimilar from the present appeal that I do not address the evidence of those cases at length. I do note, however, that the most factually similar cases appear to be *Countryside Cas. Co. v. McCormick*, 722 S.W.2d 655 (Mo. App. S.D. 1987) and *American Family Mut. Ins. Co. v. Hoffman ex rel. Schmutzler*, 46 S.W.3d 631 (Mo. App. W.D. 2001).

detail, where people live together as a family in a closely-knit group, usually because of a close relationship by blood, marriage or adoption and who deal with each other informally and not at arms length.

*Cobb*, 576 S.W.2d at 738 (internal citations omitted). *Cobb* noted that the definition of household may vary depending on the context, declined to provide a clear definition, and instead chose to describe some characteristics of a household. *See id.*

In 1983, this court in *Am. Fam. Mut. Ins. Co. v. Brown*, 657 S.W.2d 273, 275 (Mo. App. W.D. 1983), recognized the principle set forth in *Cobb* that the phrase "resident of the same household" was a phrase "subject to variable interpretation depending on the facts of each particular case." *Brown*, 657 S.W.2d at 275.

In 1985, this court in *Watt* addressed an argument that the term "household" was ambiguous. *Watt*, 690 S.W.2d at 815-16. The court in *Watt* noted the Supreme Court's prior statements in *Cobb*, but ultimately found that the term was not ambiguous. *Id.* at 815-16.

> Contrary to what is asserted by the Watts, what this court observes from the above authorities *is not* that the term "household" is ambiguous and thus capable of two or more interpretations, *but* rather these authorities reveal a struggle of determining whether, under a prescribed set of facts an individual is an insured or not within the terms of any insurance policy.
>
> The Watts further reference *American Family Mutual Insurance Co. v. Brown*, 657 S.W.2d 273 (Mo.App.1983), a case from this court dealing with the term "resident of the same household" within an exclusionary clause of an automobile insurance policy. In *Brown*, this court referred to *Cobb and Giokaris*[4] in its discussion of the term "household". Again, this court in *Brown* restated the problem, i.e., the determination of that issue must start with an acknowledgement

---

[4] *Giokaris v. Kincaid*, 331 S.W.2d 633, 639 (Mo. 1960).

that "resident of the same household" is a phrase subject to variable interpretation *depending on the facts of each particular case*. Thus, again what is illustrated is the struggle courts face in determining in each case whether a person or persons are insureds and thus within a certain policy provision.

What has occurred is the focus by our courts upon the disposal of a particular case from and upon the facts of each case and not the setting forth of any definition of the term "household". As the various authorities are read and considered, it is readily observable that attention to and concern with the term "household" has been to justify or explain the results reached in those cases. Perhaps in those cases the courts were never asked, nor was the real issue in those cases the setting forth of any definition of the term "household". That issue is presented squarely herein.

Thus, it is herein declared that the term "household" is found to be a term which is not ambiguous within and for the purposes of "homeowners" insurance policies.

*Watt*, 690 S.W.2d at 815-16 (emphases in original).

The *Watt* court then provided a definition of "household":

The term "household" as that term is expressed and to be made use of within insurance contracts shall mean a collection of persons, whether related by consanguinity or affinity or not related at all but who live or reside together as a single group or unit which is of a permanent and domestic character, with one head, under one roof or within a single curtilage; who have a common subsistence and who direct their attention toward a common goal consisting of their mutual interest and happiness.

*Id.* at 816.

In 1987, the Southern District of our court addressed a situation in which a child of divorced parents was fatally injured in a car crash while with the child's mother, who was the custodial parent. *Countryside Cas. Co. v. McCormick*, 722 S.W.2d 655, 655-56 (Mo. App. S.D. 1987). The child's father, who was not the

custodial parent, sought coverage under his automotive insurance policy.  *Id.* at 655.  Whether the policy provided coverage hinged on whether the child was "a resident of and actually living in the same household" as her father.  *Id.* at 656.  Following a bench trial in a declaratory judgment action brought by the insurer, the trial court found that the child was a resident of and actually living in the same household as her father.  *Id.* at 655-56.  On appeal, the insurance company argued that the trial court's finding was against the weight of the evidence, contending that the child was within the custody of her mother and was physically living with her mother at the time of the accident.  *Id.* at 656.

The court in *Countryside* did not address the definition of "household" provided in *Watt* but looked at statements from secondary sources and results from courts from other jurisdictions suggesting that a child of divorced parents could be a resident of both parents' households, while noting that the issue was generally considered to present a question of fact.  *Id.* at 657-58.  The court in *Countryside* then noted the description of "household" from *Cobb*.  *Id.* at 658 (quoting *Cobb*, 576 S.W.2d at 738).

*Countryside* then declared residence to be a question of fact and examined the evidence in the record that would or would not support the trial court's finding.  *Id.*  The court noted that there were factors in the record that would support a finding that the child was not a resident of her father's household.  *Id.*  The Court then noted that there were factors that supported the finding of the trial court such

that the trial court's finding that the child was a resident of her father's household was not against the weight of the evidence. *Id.* at 658-59.

One takeaway from *Countryside* is that a child of divorced parents *can be* a resident of both parents' households. *Id.* at 658. However, the court considered the question to be one of fact, and because the court was simply addressing an against the weight of the evidence challenge, the court in *Countryside* did not decide when a child of divorced parents *is* a resident of both parents' households as a matter of law but rather identified the evidence that it viewed as being relevant to the trial court's factual determination. *Id.* at 658-59.

In 1988, this court affirmed a jury finding that a child of divorced parents did not live in the household of his custodial parent or live with his non-custodial parent. *Am. Fam. Mut. Ins. Co.*, 757 S.W.2d at 305-07. The court did not address the definition of household provided in *Watt*. The court cited to family law cases for the proposition that there is a presumption that a child's residence was that of the child's custodial parent, but also stated that the custody of a child does not necessarily mean that a child as a matter of law lives with one or the other of his or her parents. *Id.* at 306 (citing *Jackson v. Shannon Cnty. Dep't of Soc. Services*, 592 S.W.2d 320, 321 (Mo. App. S.D. 1979) and *Phelps v. Phelps*, 246 S.W.2d 838, 845 (Mo. App. K.C. 1952)). The court indicated that residence depends on a person's physical location coupled with an intent to remain there for an indefinite period of time. *Id.* at 306. The court ultimately considered the question to be one

of fact and found the evidence sufficient to support the jury's finding. *Id.* at 307 ("[T]he residence of a child is a question of fact.").

In 1990, the Missouri Supreme Court in *Ward* addressed whether there was ambiguity in an exclusion that would exclude coverage for the following: "Bodily injury to any person injured while operating your insured car or for bodily injury to any person related to and residing in the same household with the operator." *See Am. Fam. Mut. Ins. Co. v. Ward*, 789 S.W.2d 791, 792, 796 (Mo. banc 1990). The Supreme Court stated: "The clause is unequivocal and unambiguous and is not subject to construction or interpretation." *Id.* at 796. However, the court in *Ward* apparently was not confronted with an argument that the terms "residing" or "household" were ambiguous.

In 1995, the Missouri Supreme Court in *Ballmer* addressed language of a household exclusion that provided: "THERE IS NO COVERAGE.... FOR ANY *BODILY INJURY* TO.... ANY INSURED OR ANY MEMBER OF AN INSURED'S FAMILY RESIDING IN THE INSURED'S HOUSEHOLD." *State Farm Mut. Auto. Ins. Co. v. Ballmer*, 899 S.W.2d 523, 525 (Mo. banc 1995) (emphasis in original). The court held that the language was not ambiguous. *Id.* Again, however, the court did not appear to be confronted with an argument that the words "residing" or "household" were ambiguous.

In 1996, relying on *Watt*, 690 S.W.2d at 815-16, the Eastern District of our court held that the "term 'household' is unambiguous when used in 'homeowners'

13

insurance policies. *Cameron Mut. Ins. Co. v. Marler*, 926 S.W.2d 62, 64 (Mo. App. E.D. 1996) (citing *Watt*, 690 S.W.2d at 815-16).

In 2001, this court reversed and remanded a grant of summary judgment in favor of an insurer on its petition for declaratory judgment. *Am. Fam. Mut. Ins. Co. v. Hoffman ex rel. Schmutzler*, 46 S.W.3d 631, 632-33 (Mo. App. W.D. 2001). The issue was whether a child of divorced parents with joint custody was a resident of his mother's household for purposes of an exclusion in his mother's homeowner's insurance policy. *Id.* at 634. The trial court granted summary judgment to the insurer after finding that the child was a resident of the households of both his father and mother. *Id.* On appeal, the *Hoffman* court reiterated that "[t]he question of whether a person is a resident of a particular household is one of fact." *Id.* (citing *Cobb*, 576 S.W.2d at 738 and *Pruitt*, 950 S.W.2d at 665). *Hoffman* did not address the definition of household set forth in *Watt* and repeated the prior understanding that the terms "resident" and "household" were dependent upon the facts of each case. *Id.* (citation omitted). *Hoffman* addressed the "factors" addressed in *Countryside* and noted that *Countryside* addressed these factors after a trial rather than in summary judgment proceedings. *Id.* at 635 (citing *Countryside*, 722 S.W.2d at 657-58). *Hoffman* then addressed the summary judgment evidence and noted that there were factual disputes on many of the factors identified in *Countryside. Id.* at 635-36. In reversing and remanding for further proceedings, the court in *Hoffman* indicated that it would be necessary for the trier of fact to resolve these factual disputes in order to make "the ultimate

14

finding of fact" of whether the child was a resident of both of his parents' households. *Id.* at 636.

In 2003, this court in *Liberty Mut. Ins. Co. v. Havner*, 103 S.W.3d 829, 830-31 (Mo. App. W.D. 2003), addressed whether a child was a resident of the household of his grandparents when the child lived with his parent on the same land but in a different house in close proximity to the house in which his grandparents lived. *Id.* at 831-32. Following a grant of summary judgment for the injured party, the *Havner* court reversed, finding that there was no genuine dispute as to the material facts and that the child did not reside in the household of his insured grandparents as a matter of law. *Id.* at 832-34. The court then remanded with instructions to enter judgment in favor of the insurer on the insurer's motion for summary judgment. *Id.* at 834. As part of its analysis, the court addressed the definition of "household" in *Watt* but, unlike the court in *Watt*, found that the term "household" was ambiguous, noting specifically that factual circumstances may render a term ambiguous. *Id.* at 832-33. *Havner* indicated that, when *Watt* referenced a struggle of determining whether an individual was a resident of another's household, the referenced struggle was actually the product of a latent ambiguity wherein the language of an agreement that "is plain on its face, becomes uncertain upon application." *Id.* (quoting *Gen. Am. Life Ins. Co. v. Barrett*, 847 S.W.2d 125, 131 (Mo. App. W.D. 1993)). *Havner* found "unclear" the meaning of the term "curtilage" in the definition of "household" provided by *Watt*, which led *Havner* to declare that the term "household" is ambiguous when

undefined in a homeowners policy. *Id.* at 833. *Havner* recognized that insurance policies should be interpreted to provide coverage where reasonably possible, but determined that there would be no coverage under any reasonable interpretation of the policy. *Id.* In its analysis, the court recognized that "[w]hether a person is a resident of another's household is a question of fact," *id.* at 833, but found that there was no genuine issue for the trier of fact to resolve as to whether the child was a resident of his grandparents' household due to the fact that the child lived in a separate house. *Id.* at 834.[5]

In 2003, shortly after the decision in *Havner*, the Eastern District of our court cited to *Watt* for the proposition that the term "household" in an insurance contract was not ambiguous and utilized the definition of "household" provided in *Watt. Allied Mut. Ins. Co. v. Brown*, 105 S.W.3d 543, 545 (Mo. App. E.D. 2003) (citing and quoting *Watt*, 690 S.W.2d at 816).[6] The court in *Brown* did not reference *Havner*'s statement that the term was ambiguous in application.

---

[5] Because *Havner* found ambiguity based solely on the inclusion of "curtilage" in the definition of household previously provided by *Watt*, and then went on to apply the definition provided by *Watt* rather than how the term had previously been understood, the ambiguity found in *Havner* would seemingly be limited to cases in which the meaning of curtilage was at issue. The broad declaration in *Havner* indicating that the term "household" is ambiguous when undefined by a policy (if read to be a broadly applicable holding of *Havner*) would seemingly be at odds with the Missouri Supreme Court's declaration in *Ward* (if read to be a broadly applicable holding) that an exclusionary clause that utilized the terms "residing" and "household" "was unequivocal and unambiguous and [] not subject to construction or interpretation." *See Ward*, 789 S.W.2d at 792, 796.

[6] Whereas *Havner* referred to this case as *Watt* when using short-form citations, *see Havner*, 103 S.W.3d at 833, *Brown* referred to it as *Mittelstadt*. S*ee Brown*, 105 S.W.3d at 545. In this opinion, I refer to the case as *Watt*.

To recap, Missouri courts have described the term "household" to be indefinable without reference to factual context. *See Cobb*, 576 S.W.2d at 738. Missouri courts have long considered the question of whether a person resides in the household of another to be a question of fact. *See Hoffman*, 46 S.W.3d at 634; *Countryside*, 722 S.W.2d at 658; *Am. Fam. Mut. Ins. Co.*, 757 S.W.2d at 306-07. And, Missouri courts have found the term "household" to be both ambiguous and unambiguous when used in an insurance policy. *Compare Watt*, 690 S.W.2d at 815-16, *and Brown*, 105 S.W.3d at 545, *with Havner*, 103 S.W.3d at 833. However, the Missouri Supreme Court has found policy language in exclusions unambiguous despite the usage of the terms "residing" and "household," albeit in cases in which no party apparently made the specific argument that the terms "residing" or "household" were ambiguous. *See Ward*, 789 S.W.2d at 792, 796; *Ballmer*, 899 S.W.2d at 525.

## IV.

I agree with the majority's result because Missouri courts have long considered the question of whether a person resides in the household of another to be a question of fact. *See Hoffman*, 46 S.W.3d at 634; *Countryside*, 722 S.W.2d at 658; *Am. Fam. Mut. Ins. Co.*, 757 S.W.2d at 306-07. Accordingly, I believe that the trial court erred in granting summary judgment to Father. Although the reasonable inferences to be drawn from the stipulated facts could support that result, the drawing of inferences in favor of the moving party is improper at the summary judgment stage. *ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*,

854 S.W.2d 371, 382 (Mo. banc 1993). In this matter, I believe that the stipulated facts are such that, depending on the inferences drawn by the trier of fact from the stipulated facts to the ultimate question of fact, a trier of fact could reasonably conclude that Daughter resided in Father's household, *or* the trier of fact could reasonably conclude that Daughter did not reside in Father's household. If the question of whether a person resides in the household of another is an ultimate question of fact, which the authorities have long indicated, *see, e.g., Hoffman*, 46 S.W.3d at 636, then I fail to see why the stipulated facts could not support reasonable but conflicting answers to that question depending on the inferences to be drawn by the trier of fact and the significance placed on the various stipulated facts by the trier of fact.

I do not believe that *Countryside* created a factor test for determining when a child of divorced parents resides in the household of another as a matter of law, because *Countryside* addressed only an against the weight of the evidence challenge and fully considered the issue to be one of fact for the trier of fact. *Countryside*, 722 S.W.2d at 658-59. Rather, given the posture of the case (an against the weight of the evidence challenge following a bench trial), I believe *Countryside* stands for the proposition that a child of divorced parents *can be* a dual resident when the evidence supports such a finding. *Id.* Because the court in *Countryside* considered the question to be one of fact, and because the court was not tasked with determining whether a converse factual finding of the trial court was supported by the evidence, *Countryside* is silent as to when a child of divorced

18

parents *is* a dual resident of both parents' households as a matter of law. *See id*. Granted, I believe that *Countryside* did identify the evidence relevant to the question.

In interpreting the policy language, I believe the trial court should adopt the meaning of "household" as judicially defined in *Watt*. *See Watt*, 690 S.W.2d at 816; *see also Griffitts*, 550 S.W.3d at 478 (declaring that no ambiguity exists where policy language has been judicially defined and that the assigned judicial definition is controlling).

> The term "household" as that term is expressed and to be made use of within insurance contracts shall mean a collection of persons, whether related by consanguinity or affinity or not related at all but who live or reside together as a single group or unit which is of a permanent and domestic character, with one head, under one roof or within a single curtilage; who have a common subsistence and who direct their attention toward a common goal consisting of their mutual interest and happiness.

*Watt*, 690 S.W.2d at 816. This definition of "household" is essentially a synthesis of the principles stated in *Cobb*, 576 S.W.2d at 738, which were subsequently utilized in *Countryside* to determine whether a child was a resident of her father's household. *See Countryside*, 722 S.W.2d at 657-59. Thus, in applying the policy language to the facts, the analysis in *Countryside* is quite relevant to determining whether Daughter was residing in Father's household, even if *Countryside* did not create a legal "test" based on the factors identified in *Countryside*.

## V.

Because of the unique posture of this case, a few words are warranted regarding why summary judgment is not appropriate in this case even though two parties have cross-motions for summary judgment based on stipulated facts. The parties below represented to the trial court that the issue before the trial court was simply one of law due to the stipulated facts relied on by both parties and due to the parties having filed cross-motions for summary judgment. However, where the parties have failed to stipulate to ultimate facts or where reasonable but contrary inferences may be drawn from the stipulated facts, summary judgment may nevertheless be inappropriate in cases such as this one.

Courts have said that when a case is submitted on stipulated facts, the only question before the appellate court "is whether the trial court made the proper legal conclusion from the stipulated facts." *Jones v. Am. Fam. Mut. Ins. Co.*, 632 S.W.3d 482, 487 (Mo. App. W.D. 2021) (quoting *Cady v. Ashcroft*, 606 S.W.3d 659, 665 (Mo. App. W.D. 2020)). Whether one or the other party with cross-motions for summary judgment is entitled to summary judgment as a matter of law based on the stipulated facts is indeed a legal conclusion that is tested on appeal with a *de novo* standard of review. *Brockington v. New Horizons Enterprises, LLC*, 654 S.W.3d 876, 880 (Mo. banc 2022) (quoting *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020)). However, the fact that there were cross-motions for summary judgment in this case does not necessarily mean that summary judgment for either one or the other of the parties will *necessarily* result.

A party is entitled to summary judgment only when the moving party establishes that there is no genuine issue as to the material facts *and* that the movant is entitled to judgment as a matter of law. *Id.* In summary judgment proceedings, all reasonable inferences are drawn in favor of the non-moving party. *Brockington*, 654 S.W.3d at 880 (quoting *ITT Com. Fin. Corp.*, 854 S.W.2d at 382). This rule means that "if the movant requires an inference to establish his right to judgment as a matter of law, and the evidence reasonably supports any inference other than (or in addition to) the movant's inference, a genuine dispute exists and the movant's prima facie showing fails." *Id.*; *see also Brentwood Glass Co., Inc. v. Pal's Glass Serv., Inc.*, 499 S.W.3d 296, 302 (Mo. banc 2016) ("A factual question exists if evidentiary issues are actually contested, are subject to conflicting interpretations, or if reasonable persons might differ as to their significance.").

In this matter, the parties stipulated to a set of facts but did not stipulate as to whether Daughter resided in Father's household, which Missouri courts have indicated is an ultimate question of fact. *See Hoffman*, 46 S.W.3d at 636. Thus, in addressing Father's motion for summary judgment, it was necessary for all reasonable inferences from the stipulated facts to be drawn in favor of Shelter. In addressing Shelter's motion for summary judgment, it was necessary for all reasonable inferences from the stipulated facts to be drawn in favor of Father. In this matter, there were varying reasonable inferences that could be drawn from the stipulated facts.

The notion that one party is necessarily entitled to summary judgment where two parties have cross-motions for summary judgment on a stipulated record presupposes that all ultimate or material facts have been stipulated and that there is no divergence of reasonable inferences to be drawn from the stipulated facts. *Cf. Graue v. Missouri Prop. Ins. Placement Facility*, 847 S.W.2d 779, 782 (Mo. banc 1993) (citing *Murphy v. Doniphan Tel. Co.*, 147 S.W.2d 616, 620 (Mo. 1941)). Had this case been tried by the court on stipulated facts instead of proceeding on cross-motions for summary judgment, the trial court could have drawn reasonable inferences from the stipulated facts and decided whether or not to draw them, *see id.*; however, because the case was presented in the posture of summary judgment, the non-movant to the respective cross-motions for summary judgment was entitled to the benefit of all reasonable inferences such that neither movant was entitled to an inference where it was not necessary to draw such an inference or when a contrary inference was reasonably supported by the stipulated facts. *See Brockington*, 654 S.W.3d at 880 (quoting *ITT Com. Fin. Corp.*, 854 S.W.2d at 382). The stipulated facts in this case could give rise to a broad array of reasonable inferences. In this matter, I believe that (in the absence of any clear indication that as a matter of law a child is a resident of the household of either parent actively exercising joint custody) a trier of fact could reasonably draw inferences giving rise to two reasonable but conflicting answers to the fact question of whether Daughter was residing in Father's household. Although the ability of the trial court to draw inferences is restricted in a summary judgment proceeding,

22

the trier of fact following trial is not so restricted, and this is true even when the

parties agree to a stipulated set of facts. *See Graue*, 847 S.W.2d at 782. That is

why, in reviewing a stipulated record following a bench trial, the inferences to be

drawn from the stipulated facts are still viewed in the light most favorable to the

judgment. *See id.* ("When the record is stipulated but not all ultimate facts or

factual inferences have been conceded, this Court reviews the stipulated facts in

the light most favorable to the respondent and disregards inferences favorable to

the appellant."); *see also Bus. Men's Assur. Co. of Am. v. Graham*, 984 S.W.2d 501,

506 (Mo. banc 1999) ("[T]his Court defers to the trial court as the finder of fact in

determinations as to whether there is substantial evidence to support the judgment

and whether that judgment is against the weight of the evidence, even where those

facts are derived from pleadings, stipulations, exhibits and depositions.").[7] This is

so because what inferences to draw from the facts of a case is central to the role of

the trier of fact. In summary judgment proceedings, all reasonable inferences are

---

[7] I recognize that there has been disagreement regarding whether deference is afforded the trial court following a bench trial when a case is submitted on stipulated facts rather than live testimony. *See e.g.,* 17 Mo. Prac., Civil Rules Practice § 84.13:5 (2023 ed.) (collecting cases and noting that the "cases are in utter disarray" and "impossible to reconcile" with respect to the conflicting interpretations regarding the deference afforded the trial court when a case is submitted on documents, such as stipulations, exhibits, and transcripts rather than conflicting testimony or the credibility of witnesses). However, this disagreement appears to be derived from Rule 84.13(d), which does not apply to review of a grant of summary judgment, as the rule expressly applies to appellate review "in cases *tried* without a jury or with an advisory jury." (emphasis added). In any case, I believe that Missouri Supreme Court cases support the proposition that the trier of fact fulfills its role as trier of fact by drawing inferences from stipulations when a case proceeds to a bench trial on a stipulated record. *Graue*, 847 S.W.2d at 782; *Graham*, 984 S.W.2d at 506. And, as noted previously, the parties in this matter did not stipulate to all material facts as the parties did not stipulate to the fact question of whether Daughter was residing in Father's household.

drawn in favor of the non-movant, because summary judgment effectively prevents the case from being decided by the trier of fact. Thus, summary judgment proceedings assume that the trier of fact would draw all inferences favorable to the non-movant, because only by testing the strength of the movant's case in this manner can a court determine whether it is appropriate to withdraw the case from the trier of fact and to decide it as a matter of law without a trial.

## VI.

I concur with the majority's result because Missouri courts have long considered the question of whether a person resides in the household of another person to be a question of fact. *Hoffman*, 46 S.W.3d at 634; *Am. Fam. Mut. Ins. Co.*, 757 S.W.2d at 306-07; *Countryside*, 722 S.W.2d at 658-59. However, I have given strong consideration to whether this result best serves the law. If cases such as this one are indeed left to the trier of fact, then the law becomes, to some extent, unpredictable, which necessarily entails that parties, in entering insurance contracts, could not have certainty as to whether a child of divorced parents resides in the household of one or both of the parents until the trier of fact makes its ultimate finding – one that is necessarily made after the contract is entered and the loss for which coverage is sought is sustained. That is, contrary findings could be found by different triers of fact in different cases based on the same set of undisputed factual circumstances.

Courts could potentially resolve this uncertainty in a couple of alternative ways. It could potentially be resolved as a matter of defining the uncertain terms

24

in the specific context of a child of divorced parents. Alternatively, it could potentially be resolved by considering the question to be one of pure contract interpretation, wherein an uncertainty as to which of the parents' households a child resides could be viewed as the product of a latent ambiguity in the contract, giving rise to principles of construction in which ambiguities are resolved in favor of the insured.

Missouri courts have long struggled to define what it means to be a resident of another's household. *See Cobb*, 576 S.W.2d at 738; *Watt*, 690 S.W.2d at 815-16. Regarding the definition of "household," Missouri courts have indicated that the very definition of the word depends upon the facts of a particular case. *Cobb*, 576 S.W.2d at 738. Certain definitions have been provided in light of contexts that are radically different from the context of a child of divorced parents. *See, e.g., Watt*, 690 S.W.2d at 816 (providing definition for household in the context of whether two couples resided in the same household); *Ward*, 487 S.W.2d at 450-51 (defining household in the context of whether father and son resided in household of grandfather). However, because these definitions have been provided in radically different contexts, they have seemed to provide little clarity in the context of a child of divorced parents.

Courts have never provided a specific definition for when a person "resides" in the "household" of another in the specific context of a child of divorced parents. Of course, because the courts consistently considered the question to be one of fact, the role of the courts in interpreting the contract was simply to interpret the

25

meaning of the policy language and to allow the trier of fact to decide whether the facts satisfy the meaning of the policy language. *Cf. State Farm Mut. Auto. Ins. Co. v. Allen*, 744 S.W.2d 782, 786 (Mo. banc 1988) ("There is no precise formula for determining whether a vehicle is 'furnished for the regular or frequent use of the insured.' The question is purely factual, and the trier of fact must apply the policy language to the facts brought out in the evidence.").

To provide clarity to the law and to parties in entering contracts in which this issue may arise, it may be appropriate for courts to define terms such as "reside" and "household" *in the specific context* of the child of divorced parents when the child spends time with each parent. Such a judicial definition could provide predictability and consistency to the broad array of factual scenarios that may arise in this context. One such definition could provide that the child of divorced parents with joint custody resides with both parents, provided the child regularly spends time with both. An alternative definition could provide that a child of divorced parents resides with the parent they live with most frequently or the parent with primary custody. Either would carry the benefit of adding certainty to the law and to parties in entering contracts.

An alternative resolution would be to treat the matter solely as one of interpretation and to resolve any uncertainty in favor of the insured. There is some support in the law for this approach. Certainly, numerous cases have stated that terms such as "reside" and "household" are not ambiguous. *Brown*, 105 S.W.3d at 545; *Marler*, 926 S.W.2d at 64; *Watt*, 690 S.W.2d at 815-16. The Missouri

26

Supreme Court has declared policy language that has included such terms to be "unequivocal and unambiguous and [] not subject to construction or interpretation." *Ward*, 789 S.W.2d at 792, 796. However, other cases have recognized that an ambiguity may not reveal itself until words, which are plain on their face, are viewed in factual context. *Havner*, 103 S.W.3d at 832-33 (recognizing the notion of a latent ambiguity when language that appears plain on its face becomes uncertain in application). Generally, in Missouri, ambiguities in an insurance contract are resolved in favor of an insured. *Swadley*, 513 S.W.3d at 357. However, the extent to which this principle applies when the ambiguity arises from a factual uncertainty rather than the use of terms that are themselves ambiguous may be questionable, given that courts have also indicated that an ambiguity may give rise to a question of fact. *See D.R. Sherry Constr.*, 316 S.W.3d at 902. That is, in Missouri, depending on the context, it is not entirely clear when an ambiguity may be properly resolved by the trier of fact or when it can be decided purely as a question of law as a matter of the presence of an ambiguity to be resolved in favor of an insured – particularly when the ambiguity is not a matter of uncertainty in the meaning of the language but instead a matter of uncertainty as to whether the facts satisfy the meaning of the words employed in the contract. *Compare D.R. Sherry Constr.*, 316 S.W.3d at 902 (noting that an ambiguity may present a fact question for the trier of fact), *with Swadley*, 513 S.W.3d at 357 ("Any ambiguity is resolved in favor of the insured."). The case law in Missouri indicates that the scenario in this matter presents a question of fact to be resolved by the

27

trier of fact. *Hoffman*, 46 S.W.3d at 634; *Am. Fam. Mut. Ins. Co.*, 757 S.W.2d at 306-07; *Countryside*, 722 S.W.2d at 658-59.

Other jurisdictions have addressed a scenario similar to the one presented in this case. In *Nat'l Auto. & Cas. Ins. Co. v. Underwood*, 11 Cal.Rptr.2d 316 (Cal. Ct. App. 1992), the court addressed a grant of summary judgment on an insurer's declaratory judgment action based on an exclusion that would exclude coverage if the children of divorced parents were residents of their mother's household. *Id.* at 317. The children's mother and father shared legal and physical custody, though the divorce agreement designated the father as the primary caretaker of the children. *Id.* The children usually lived with their father, attended school in their father's county of residence, but stayed with their mother every other weekend and ten weeks during the summer. *Id.* The children were at their mother's residence the day before the car accident, and kept some personal items at their mother's apartment. *Id.* at 317-18.

The trial court granted summary judgment to the children's father and mother, determining that the children resided with their father and thus were not residents of their mother's household. *Id.* at 318. The insurer appealed, contending that the underlying facts could indicate different possible outcomes such that summary judgment was inappropriate. *Id.* The appellate court determined that the conflicting inferences to be drawn from the facts were actually a product of conflicting interpretations, that reinforced why it was necessary for the court to assume its role of interpreting the contract language. *Id.* (citation

28

omitted).  The appellate court noted that the terms "resident" and "household" had been interpreted in numerous different ways in the insurance context leaving the area of the law "muddled."  *Id.* at 320.  The court noted that prior courts had instructed subsequent courts to look to whether coverage had been extended or excluded under the facts of those cases rather than whether the terms were inherently ambiguous, while taking into consideration that most courts interpret the terms in favor of coverage.  *Id.*

The *Underwood* court then looked at the language and the facts of the case before it and found that there were three reasonable constructions of "residence." *Id.* The court noted that one reasonable construction was that the children resided with their father as the children spent a majority of their time at their father's.  *Id.* at 320-21.  The court noted that another reasonable construction was that the children were residents of where they were physically at the time of the accident, which would be with their mother.  *Id.* at 321.  The court noted that a third reasonable construction would be that the children had dual residences with their mother and father.  *Id.*  The court then determined that the term "resident" was ambiguous as used in the policy and was to be construed against the insurer.  *Id.* at 321-22.  The court reached this result despite noting a prior case in which a child was held to be residing in his father's household and therefore excluded from coverage where the child spent a substantially equal amount of time with his father and mother.  *Id.* at 321 (citing *Safeco Ins. Co. v. Gibson*, 259 Cal.Rptr. 206, 211 (Cal. Ct. App. 1989)).

Of course, the *Underwood* case was decided in another jurisdiction, whereas Missouri law has repeatedly held that the issue of whether a child of divorced parents was residing in one or the other or both of their households is a question of fact rather than a matter of pure contract interpretation.[8] *See Hoffman*, 46 S.W.3d at 634; *see also Am. Fam. Mut. Ins. Co.*, 757 S.W.2d at 306-07; *Countryside*, 722 S.W.2d at 658-59. Nevertheless, the route taken in *Underwood* could potentially add certainty to the law and consistency to the results in cases such as this one that pose the question of whether the child of divorced parents resides in one or the other or both of their households, depending on whether the issue is being determined in the context of providing or excluding coverage.

As previously discussed, as an alternative means to provide clarity to the law, courts could (in the absence of a policy definition) refine the definition of terms such as "reside" and "household" in the specific context of the child of divorced parents. One such refinement could provide that the child of divorced parents with joint custody resides with both parents, provided the child regularly spends time with both. An alternative could provide that a child of divorced parents resides with the parent they live with most frequently or the parent with primary custody.

---

[8] Although I believe my interpretation of the law as it pertains to the drawing of inferences for purposes of summary judgment (as discussed in section V of this opinion) to be correct according to Missouri law, I do recognize that other jurisdictions have rejected that approach and instead determined that where conflicting reasonable inferences may be drawn from the facts, it indicates that there is an ambiguity in the contract language, such that the language should be interpreted against the drafting insurer and in favor of the insured as a matter of law. However, that has not heretofore been the route taken by Missouri courts in cases addressing similar factual scenarios and policy language.

Any such judicial refinement of "residency" and "household" would provide certainty to parties entering into insurance contracts, regardless of whether the terms are used in the context of coverage or exclusion of coverage.

## Conclusion

In conclusion, I believe that there is uncertainty in the law in this type of case in which the question is whether a child of divorced parents "resides" in the "household" of one or both of said parents. One way to resolve such cases is to treat the question as one of fact and allow the trier of fact to resolve such questions. That has been the method of resolution in Missouri. Because there are numerous cases providing ample support in the law for this method of resolution, and because to resolve the question differently would involve disagreement with and a departure from an established line of cases, I concur in the result of the majority opinion. However, I have written separately due to my concerns about the uncertainty that may follow in future cases if the question of whether a child of divorced parents resides in the household of one or both parents continues to be considered a question of fact.

_____
Thomas N. Chapman, Judge